# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**EDRA D BLIXSETH**,

Debtor.

Case No. **09-60452-7**

---

**RICHARD SAMSON** and **ROSS P RICHARDSON**,

Plaintiffs.

-vs-

**CINCINNATI INSURANCE COMPANY**,

Defendant.

Adv No. **11-00014**

# MEMORANDUM of DECISION

At Butte in said District this 14th day of November, 2011.

In this Adversary Proceeding, Plaintiff Ross P. Richardson, the duly-appointed Chapter 7 Trustee for Yellowstone Club World, LLC and Plaintiff Richard J. Samson, the duly-appointed Chapter 7 Trustee for the Estate of Edra D. Blixseth filed a First Amended Joint Complaint on April 4, 2011, asserting Breach of Contract, Bad Faith and violation of the automatic stay claims against the Defendant, Cincinnati Insurance Company. The Plaintiffs also seek declaratory relief in their First Amended Joint Complaint. Trial in this matter is scheduled to commence December 1, 2011.

In contemplation of trial, the parties filed competing motions for summary judgment: on

1

August 8, 2011, by Plaintiff Ross P. Richardson (also referred to as Plaintiff or Richardson), as Chapter 7 Trustee of the Estate of Yellowstone Club World LLC and on October 7, 2011, by Defendant Cincinnati Insurance Company (also referred to as Defendant, Cincinnati or CIC). Also pending is Plaintiff Richardson's Motion to Strike [Cincinnati Insurance Company]'s References to Counsel's Statements as Evidence in Support of CIC's Motion for Summary Judgment and Motion in Limine Regarding Same filed October 28, 2011.

       **I.**      **Plaintiff Richardson's Motion for Summary Judgment**.

As noted above, Richardson filed his motion on August 8, 2011, seeking summary judgment on all four counts of the First Amended Joint Complaint.  The Motion is accompanied by a brief and an Affidavit of John L. Amsden with attached exhibits 1 through 29.  Cincinnati Insurance Company filed an objection to Richardson's motion on September 30, 2011, and also filed a separate statement of genuine issues, an Affidavit of Victor C. Peters with attached exhibits A, C, D, E, F, G, I, K, L, M, N, O, P and P, an Affidavit of Constance S. Hennigan with attached exhibit Q, an Affidavit of Nancy K. Tordai with attached exhibits R, S, T, U, V, W, X, Y, Z, AA, BB, CC, DD, EE, FF, GG, HH, II, JJ, KK, LL, MM, NN, and eight other exhibits identified by name rather than alphabetic figure, Declaration of Robert J. Phillips, and an Affidavit of Sid Ahmed Chair.  Richardson filed on October 17, 2011, a Reply in Support of Motion of Summary Judgment with attached exhibits 1 through 5.  In his brief, Richardson asserts the following are undisputed facts:[1]

---

[1]  The Court would note that Mont. LBR 7056-1(a)(1) requires that a "separate, short, and concise 'Statement of Uncontroverted Facts' must accompany every motion for summary judgment.  Failure to submit this statement constitutes grounds for denial of the motion."

1.    On January 31, 2008, CIC issued Blue Chip Policy No. BCP 877 89 44 [sic][2] to

Yellowstone Mountain Club LLC ("YMC") and its subsidiaries for the period from Jan. 31, 2008

through Jan. 31, 2009 (the Policy). The Policy provides "Directors and Officers Liability and

Company Coverage." UMF 1.

2.    On August 20, 2008, Edra Blixseth commenced serving as officer, director and/or

managing agent for YMC and also for YMC's subsidiary Yellowstone Development LLC

("YD") and Danika Investments Limited ("Danika").  UMF 2.  She remained in those positions

through at least January 31, 2009.  UMF 2.

3.    The Policy contains an insuring agreement providing that:

> We will pay on behalf of the "directors and officers" all "loss" which they shall be
> legally obligated to pay . . . resulting from any "claim" first made during the
> "policy period," or any "extended reporting period" included in or endorsed to the
> policy, for a "wrongful act."

UMF 3.

4.    On January 30, 2009, before the Policy period ended, YMC, as the named insured

under the Policy, notified CIC that allegations of wrongful acts had been made against the policy

insureds. In that letter, YMC:

> formally tender[ed] to Cincinnati the defense against, and indemnity for, any and
> all claims against all other insureds, including all individual directors, officers and
> employees of Yellowstone, under all potentially applicable policies, including
> policy no. BCP 8779827.

UMF 4 (emphasis added).

5.    As of March 9, 2009, CIC knew that Edra Blixseth was an officer, director and/or

---

[2]  The Policy Number is actually BCP 877 98 27.  The previous policy number had been
BCP 877-89- 44.

managing agent of YMC. UMF 5.

6.     On March 17, 2009, the Plaintiff Ross Richardson, the YCW Chapter 7 Trustee, submitted Proof of Claim #664-1 against YMC in Case No. 08-61470 [sic] in the amount of $103,587.987. This claim was based in part on the failure to record options and rights of use promised to YCW. UMF 6.

7.     On March 18, 2009, the YCW Chapter 7 Trustee submitted Proof Claim #228-1 against YD in Case No. 08-61571 in the amount of $50,000,000. This claim was also based in part on the failure to record options and rights of use promised to YCW. UMF 7.[3]

8.     As of March 23, 2009, CIC recognized that the Policy included a duty to defend Edra Blixseth. UMF 8.

9.     On March 26, 2009, Edra Blixseth filed for federal bankruptcy protection. UMF 9.

10.     On April 3, 14 and 16, 2009, Richardson asserted demands on Danika, its equity holders, attorneys and accountants relating to the options and rights of use. UMF 12.

11.     On July 20, 2009, the YCW Chapter 7 Trustee submitted an amended Proof of Claim (#664-2) in the YMC bankruptcy proceeding. This claim was based, in substantial part, on Edra Blixseth's failure to record options and rights of use that had been promised to YCW. UMF

_____

[3]  The extended reporting provision of the CIC policy expands coverage to claims first asserted 60 days after the expiration of the policy period so long as the wrongful acts occurred within the policy period:

> The Extended Reporting Periods extend coverage to "claims" first made during the length of time covered by the applicable Extended Reporting Period provided the "wrongful act" was committed, attempted or allegedly committed or attempted prior to the end of the "policy period" . . . Such "claims" must be reported in writing to us prior to the expiration of the applicable Extended Reporting Period.

UMF 10. A 60-day Basic Extended Reporting Period is automatically provided. UMF 11.

13.

12. On July 29, 2009, the YCW Chapter 7 Trustee timely filed Proof of Claim #46-1 against Edra Blixseth's Estate in Case No. 09-60452. UMF 14.

13. The YCW Chapter 7 Trustee's proof of claim alleged, with respect to Edra Blixseth that:

> If for any reason the Rights of Use and Option Agreements are not valid and enforceable as against the Resort Properties and/or their owners or successor-in-interest thereto as a result of Debtor's failure to act, then the breach of fiduciary duty damages are $60,710,568.

UMF 15.

14. An amended Proof of Claim (#46-2) against Edra Blixseth's estate was subsequently filed on August 4, 2009. UMF 16. Again, this claim was based, in part, on Edra Blixseth's failure to record certain options and rights of use promised to YCW. The amended Proof of Claim was in the amount of $103,587,987. UMF16.

15. The Policy provides that all claims "based upon or arising out of the same 'wrongful act' or any 'interrelated wrongful acts'" are considered a single claim and are:

> [D]eemed to be first made at the earliest of the following times:

> 1. When notice of the earliest "claim" arising out of such "wrongful act" or "interrelated wrongful acts" is received in writing by a "policy insured"[2] or by us, whichever comes first; or

> 2. When notice pursuant to Section V of the General Provisions of a "wrongful act" giving rise to such "claim" is given.

UMF 17 (emphasis added). Thus, because notice was first given on January 30, 2009, the tender of these related claims was "first made" during the Policy period and the proof of claim was timely in Edra Blixseth's bankruptcy.

5

16.    The YCW Chapter 7 Trustee's claim alleged a "wrongful act" under the Policy.

Under the Policy, "wrongful acts," for which YMC officers and directors were insured against

liability under the CIC policy, are defined by the Policy to mean:

> [A]ny actual or alleged error, misstatement, misleading statement, act, omission,
> neglect or breach of duty committed, attempted or allegedly committed or
> attempted on or after the Retroactive Date,[3] if any, set forth in the Part I
> Declarations and prior to the end of the "policy period"[4] by:

> 1.    Any of the "directors or officers" in the discharge of their duties solely in
> their capacity as a director or officer of the "company;" or

> 2.    * * *

> 3.    The "company."

UMF 18.

17.    As of October 2, 2009, CIC knew that Edra Blixseth was in bankruptcy and knew

that it needed relief from the automatic stay to spend down her limits. UMF 19; UMF 20.

On February 3, 2010, the YCW Chapter 7 Trustee tendered the claim directly to CIC. UMF 21.

CIC did not respond.

18.    On February 4, 2010, the YCW Chapter 7 Trustee sent CIC a copy of an order from

Judge Peterson, ordering mediation of YCW's claims against the Insured Estate. The YCW

Chapter 7 Trustee invited CIC to attend. UMF 22. CIC did not attend the mediation.

19.    On February 15, 2010, the YCW Chapter 7 Trustee and the Chapter 7 Trustee for

the Estate of Edra D. Blixseth jointly moved the Court for an order appointing Judge Peterson to

mediate Proof of Claim #46. UMF 23.

20.    On February 16, 2010, the Court appointed Judge Peterson to conduct an

immediate mediation to resolve the YCW Chapter 7 Trustee's Proof of Claim #46. UMF 24.

6

21.    On February 16, 2010, Judge Peterson issued an order setting a mediation conference for February 17, 2010, on the YCW Chapter 7 Trustee's Proof of Claim #46. UMF 25.

22.    On February 17, 2010, CIC in writing indicated it would not respond to the YCW Chapter 7 Trustee's attempts to communicate: "Cincinnati will not respond to the items and issues raised in your letters." UMF 26.

23.    Over a year later, in March 2011, CIC claimed to have spent the entire policy limits of its policy defending the YMC officer and director who was Edra Blixseth's predecessor. UMF 27. The creditors in Edra Blixseth's bankruptcy proceeding are not the same as the creditors in the YMC bankruptcy proceeding. UMF 28. It is undisputed that CIC neither asked for nor received relief from the automatic stay in Edra Blixseth's bankruptcy proceeding that would have allowed CIC to deplete an asset of her estate by defending some other officer and director whose claim to coverage was no greater than Edra Blixseth's. UMF 29.

24.    Left without a defense from its liability insurer, the Insured Estate stipulated to an allowed claim in favor of the YCW Chapter 7 Trustee (the "Allowed Claim"). UMF 30. On April 6, 2011, the Court approved the stipulated Allowed Claim. UMF 31.

Cincinnati Insurance Company asserts the following are genuine issues that preclude entry of summary judgment in Richardson's favor:

**Plaintiff's Fact No. 1.** Cincinnati disputes Plaintiff's Statement of Fact No. 1 because Ex. 1 to the Plaintiffs' Summary Judgment Motion is not a complete copy of the 2008 to 2009 Cincinnati Policy. A certified copy of the Cincinnati Policy is attached to the Affidavit of Constance Hennigan at Exhibit Q. Statement of Fact No. 1 is further disputed because the

"Directors and Officers Liability and Company Coverage" is subject to the terms, conditions and exclusions of the Policy. The Named Insured is identified as, and the Policy was issued to "Yellowstone Mountain Club, LLC and Subsidiaries". (Yellowstone Mountain Club is referred to herein as "YMC).

**Plaintiff's Fact No. 2.** It is disputed whether Edra Blixseth commenced serving as officer, director and/or managing agent for YMC, Yellowstone Development ("YD") and Danika on August 20, 2008; and whether YD and Danika are subsidiaries a subsidiary of YMC. (YCW's Fact No. 2). Plaintiffs' evidence on this point (Pl. Ex. 2) is two documents, neither of which state that Edra D. Blixseth commenced serving as officer, director and/or managing agent for YMC, YD and Danika on August 20, 2008. The two documents also do not state that YD was a subsidiary of YMC – they show that they are separate entities.

Yellowstone Development was not a subsidiary of Yellowstone Mountain Club as Mountain Club did not own it. (Tordai Aff., Ex. A, p. 17, 18)

Danika was not a subsidiary of Yellowstone Mountain Club. (Tordai Aff., Ex. A, p. 6162)

**Plaintiff's Fact No. 3.** Cincinnati disputes YCW's Fact No. 3 because it does not cite Section I.A. in its entirety. Part I. Section I. Paragraph A. reads as follows: "We will pay on behalf of the 'directors and officers' all 'loss' which they shall be legally obligated to pay, except for such 'loss' which the 'company' actually pays as indemnification, resulting from any 'claim' first made during the 'policy period', or any 'extended reporting period' included in or endorsed to the policy, for a 'wrongful act'."

**Plaintiff's Fact No. 4.** YCW's Fact Number 4, that YMC, as the named insured

8

under the Policy, on January 30, 2009 before the Policy period ended, "notified CIC that

allegations of wrongful acts had been made against the policy insureds" and that YMC "formally

tender[ed] to Cincinnati the defense against, and indemnity for, any and all claims against all

other insureds, including all individual directors, officers and employees of Yellowstone, under

all potentially applicable policies, including policy no. BCP 8779827", is disputed as it misstates

and is unsupported by Ex. 3 and 4 cited.

On January 30, 2009, Matthew Sekits, counsel for Yellowstone Mountain Club, sent two

letters to Cincinnati on behalf of Yellowstone Mountain. The January 30, 2009 letters (Ex. 3 and

Ex. 4) did not notify Cincinnati that "allegations of wrongful acts had made against the policy

insureds". (Pls. Fact No. 4) Rather, the January 30, 2009 letters identified the following specific

wrongful acts that the letters stated are "likely to give rise to a 'claim'" against Yellowstone

Mountain Club or other policy insureds:

> Yellowstone has become aware of transfers of assets to person and/or entities
> outside Yellowstone without proper authorization or in violation of applicable
> law. These unauthorized transfers could result in injury and damage to
> Yellowstone's creditors. Yellowstone first became aware of these unauthorized
> transfers after it filed for bankruptcy, while it was reviewing its internal financial
> documents. (Pl. Ex. 3 and 4)

The January 30 letters tendered to Cincinnati Yellowstone Mountain Club's and the policy

insureds' defense against, and indemnity for, any and all claims subsequently made by

Yellowstone Mountain Club's creditors arising out of the transfers of Yellowstone Mountain

Club's assets to persons and/or entities outside Yellowstone Mountain Club without proper

authorization or in violation of applicable law. (Pl. Ex. 3 and 4)

**Plaintiff's Fact No. 5.** Fact No. 5 is disputed in its entirety as unsupported by the

cited evidence. The cited evidence, Ex. 5, the March 23, 2009 letter of Victor Peters,

Cincinnati's counsel, to Matthew Sekits, counsel for Yellowstone Mountain Club, states at p.3

footnote 1 that "it is unclear whether Ms. Blixseth is currently an officer or director of YMC."

Contrary to Plaintiff's Statement of Fact No. 5, Cincinnati did not know as of March 9, 2009 that

Edra Blixseth was an officer, director and/or managing agent of Yellowstone Mountain Club.

Plaintiff's Exhibit 6, the June 23, 2009 letter from Matthew Sekits, counsel for

Yellowstone Mountain Club does not identify Edra Blixseth as a director or managing agent of

Yellowstone Mountain Club.

**Plaintiff's Fact No. 6.** Whether Proof of Claim Number 664-1 which was filed by

the YCW Trustee against YMC in Case No. 08-61470 on March 17, 2009 was in the amount of

"$103,587.987" and whether it "was based in part on the failure to record options and rights of

use promised to YCW" (Pls. Fact No. 6) are disputed.

The cited evidence does not support Pls. Fact No. 6.

The cited evidence, Proof of Claim No. 664-1 (Pls. Ex. 7) is not in the amount of

"$103,587.987", but rather the "amount of Claim as of Date Case Filed" is identified as

"$50,000,000.00 Estimate". Proof of Claim No. 664-1 contains no description supporting the

"$50,000,000.00 Estimate". Proof of Claim No. 664-1 contains no description of any claim,

does not describe the wrongdoing allegedly committed by the debtor, and does not evidence an

intent to hold the debtor liable.

**Plaintiff's Fact No. 7.** Whether Proof of Claim Number 228-1 which was filed by

the YCW Trustee against Yellowstone Development ("YD") in Case No. 08-61571 on March 18,

2009 "was based in part on the failure to record options and rights of use promised to YCW" is

10

disputed. (Pls. Fact No. 7).

The cited evidence, Proof of Claim No. 228-1 (Pls. Ex. 8), does not state that Proof of

Claim No. 228-1 "was based in part on the failure to record options and rights of use promised to

YCW". No statement regarding the recording of options and rights of use is made in Proof of

Claim No. 228-1. The only description of the grounds for Proof of Claim No. 228-1 is contained

in Ex. D to Proof of Claim No. 228-1. Exhibit D to Proof of Claim No. 228-1 does not state that

the Proof of Claim is based on the failure to record options and rights of use. Exhibit D only

states that (1) "debtors refused and continue to refuse to produce documents necessary for the

Chapter 7 Trustee to fully evaluate the claims he may have as against the Debtors in this case";

(2) "Debtors have refused to provide information concerning property as to which the Chapter

Trustee had a contractual right of use and option to purchase"; (3) "the Chapter 7 Trustee is

informed and believes, and based thereon alleges, that the Debtors and its agents have breached

their contractual obligations to the Estate of Yellowstone Club World, LLC, as well as other

duties under applicable law".

**Plaintiff's Fact No. 8.** Plaintiff's Fact No. 8 that "At least as of March 23, 2009,

CIC recognized that the Policy included a duty to defend Edra Blixseth" is disputed. The cited

evidence, Pl. Ex. 5, states that Cincinnati was agreeable to extending a defense to Edra Blixseth

for the *Snow* lawsuit only because it alleged "wrongful acts" of which Cincinnati received notice

in the January 30, 2009 letter from Yellowstone Mountain Club's counsel and Edra Blixseth was

identified in the *Snow* lawsuit as a former officer of Yellowstone Mountain Club. Exhibit 5

further states that "coverage is only available to Mr. and Ms. Blixseth to the extent that the *Snow*

lawsuit alleges that Mr. and Ms. Blixseth were acting "solely in their capacity as a director or

11

officer of YMC." Cincinnati did not recognize that the Policy included a duty to defend Edra Blixseth for every claim made against her.

Plaintiff's Exhibit 9 also only states that Cincinnati accepted the defense of Edra Blixseth for the *Snow* lawsuit. Plaintiff's Exhibit 9 does not state that the Policy contains a duty to defend Edra Blixseth for every claim made against her.

Fact No. 8 is irrelevant because Edra Blixseth rejected Cincinnati's defense of the *Snow* litigation. (Victor Peters Aff., ¶9-15)

**Plaintiff's Fact No. 9.** It is undisputed that Edra Blixseth filed for Bankruptcy Protection on March 26, 2009.

**Plaintiff's Fact No. 10.** Plaintiff's Fact No. 10 interprets a policy provision and, hence is a conclusion of law rather than a statement of fact and should be excluded by this Court. *Neal v. Juarez*, 2007 U.S. Dist. LEXIS 98068 (S.D. Cal. July 23, 2007) (The Court excludes factual assertions that are immaterial or that are conclusions of law rather than statements of fact.); *Nanak Resorts, Inc. v. Haskins Gas Serv. (In re Rome Family Corp.)*, 407 B.R. 65, 68 (Bankr. D. Vt. 2009) (The Court has omitted repetitive statements, statements making legal conclusions, or statements of facts that are not material to this dispute); *Kilroy v. Ruckelshaus*, 738 F.2d 1448, 1452 (9th Cir. Cal. 1984) (The court was not obligated to accept legal conclusions as true simply because they were characterized them as statements of fact.)

Plaintiff's Fact No. 10 is also disputed because it incorrectly describes the Policy terms. The extended reporting period "does not extend the 'policy period' or change the scope of coverage provided; it extends the claims reporting period." (Policy, Section XVIII.B., p. 14 of 16). "Claims" first made during the Extended Reporting Period must be for "wrongful acts" that

were committed or attempted prior to the end of the "policy period", are subject to all terms,

conditions and exclusions of the Policy, and must be reported in writing to Cincinnati prior to

expiration of the 60-day Extended Reporting Period:

> The Extended Reporting Periods extend coverage to "claims" first made during
> the length of time covered by the applicable Extended Reporting Period provided
> the "wrongful act" was committed, attempted or allegedly committed or attempted
> prior to the end of the "policy period" of the applicable Coverage Part, and all
> such "claims" shall be subject to all other terms, conditions and exclusions of the
> applicable Coverage Part and the General Provisions. Such "claims" must be
> reported in writing to us [Cincinnati] prior to the expiration of the applicable
> Extended Reporting Period." (Policy, Section XVIII.C., p. 14 of 16).

**Plaintiff's Fact No. 11.** It is undisputed that a 60-day Basic Extended Reporting

Period is provided subject to the terms, conditions and provisions of Part IV. Section XVIII. and

the other terms, conditions, provisions and exclusions of the Policy.

**Plaintiff's Fact No. 12.** It is disputed that on April 3, 2009 Richardson asserted

demands on Danika, its equity holders, attorneys and accountants relating to the options and

rights of use because it is unsupported by the cited evidence (Ex. 11, Ex. 12 and Ex. 13). Ex. 11

asserted "a claim for the value of the Right of Use" and a "claim for the Option to Purchase" and

requested that Danika "kindly account for these claims in the appropriate manner under

applicable law". Ex. 12 does not identify any of the recipients as Danika's accountants. Ex. 12

does not address the claimed rights of use. Ex. 12 requested that "debts owing to YCW by

Danika Investments, Ltd. be paid at this time and, in any event, prior to any distribution to equity

of Danika Investments, Ltd.", and, with respect to the claimed Option agreement, stated that

"YCW is due $4,711,330 upon the pending sale of the property". Ex. 13 does not identify the

recipients as Danika's accountants or attorneys. Ex. 13 does not address the claimed rights of

use. Ex. 13 requested that "debts owing to YCW by Danika Investments, Ltd. be paid at this time and, in any event, prior to any distribution to equity of Danika Investments, Ltd.", and, with respect to the claimed Option agreement, stated that "YCW is due $5,361,238 upon the pending sale of the property".

**Plaintiff's Fact No. 13.** It is disputed that Proof of Claim Number 664-2, which was filed by the YCW Trustee against YMC in Case No. 08-61470 on July 20, 2009 "was based in substantial part on Edra Blixseth's failure to record options and rights of use that had been promised to YCW". (Pls. Fact No. 13).

The cited evidence, Proof of Claim No. 664-2 (Pls. Ex. 14), does not state that Proof of Claim No. 664-2 was based "on the failure to record options and rights of use promised to YCW". No statement regarding the recording of options and rights of use is made in Proof of Claim No. 664-2. The cited evidence does not support Pls. Fact No. 13.

**Plaintiff's Fact No. 14.** Plaintiff's Fact No. 14 is disputed because the cited evidence does not support that fact. Yellowstone Club World LLC filed Proof of Claim 46-1 on July 29, 2009 against the Estate of Edra Blixseth. The Cincinnati Insurance Policy is a claims made policy that potentially affords coverage for "claims" that are first made during the January 31, 2008 to January 31, 2009 Policy Period, or for "claims" that are first made and reported in writing to Cincinnati prior to April 1, 2009 and that otherwise satisfies the conditions of the Extended Reporting Period clause. (Hennigan Aff., Ex. Q, Declarations and Policy, Part I Section I.A., Part IV. Section XVII.C.) The statement that Proof of Claim 46-1 was "timely filed" is disputed because it was filed after the Policy and the Extended Reporting Period expired.

14

**Plaintiff's Fact No. 15**. Plaintiffs' Fact No. 15 is disputed. Proof of Claim No. 46-

1 stated that the YCW Chapter 7 Trustee asserts "a contingent breach of fiduciary duty claim"

(Pl. Ex. 12) and stated the following with respect to the "contingent breach of fiduciary duty

claim":

> <u>Third</u>, YCW was a party to an October 1, 2005, Agreement, which included
> among other things a perpetual Right of Use and a 10-year option, which has
> since been extended to 15 years, to purchase certain Resort Properties. *See* Exh. 2
> "YCW Fact Sheet," and several other written option agreements and agreements
> for access. The fully-paid up Rights of Use and Option Agreements are valid if
> enforceable as against the Resort Properties identified in the YCW Fact Sheet. If
> for any reason the Rights of Use and Option Agreements are not valid and
> enforceable as against the Resort Properties and/o4 their owners or successors-in
> interest thereto as a result of Debtor's failure to act, then the breach of fiduciary
> duty damages are **$60,710,568**. *See* Exh. 3 (YCW Fact Sheet, Agreement, Option
> Valuation).

Given that this is a "contingent breach of fiduciary duty claim" no "allegations" were made

against Edra Blixseth. The cited evidence does not support Pls. Fact No. 15.

**Plaintiff's Fact No. 16.** It is disputed that amended Proof of Claim Number 46-2

which was filed by the YCW Trustee in Case No. 09-60452, Edra Blixseth's bankruptcy

proceeding "was based in part on the failure to record options and rights of use promised to

YCW". (Pls. Fact No. 16).

The cited evidence, Proof of Claim No. 46-2 (Pls. Ex. 16), does not state that Proof of

Claim 46-2 "was based in part on the failure to record options and rights of use promised to

YCW". No statement that Edra Blixseth failed to record certain options and rights of use

promised to Yellowstone Club World is made in Proof of Claim No. 46-2.

**Plaintiff's Fact No. 17.** Plaintiffs' Fact No. 17 is disputed in that ignores the Policy

wording which states that only "claims", as that term is defined in the Policy, are subject to

15

Section II.E. Section II.E. reads as follows:

> Regardless of the number of policies or Coverage Parts involved, all "claims" based upon or arising out of the same "wrongful act" or any "interrelated wrongful acts" shall be considered a single "claim". Each "claim" shall be deemed to be first made at the earliest of the following times:
>
> 1.      When notice of the earliest "claim" arising out of such "wrongful act" or "interrelated wrongful acts" is received in writing by a "policy insured" or by us, whichever comes first; or
>
> 2.      When notice pursuant to Section V of the General Provisions of a "wrongful act" giving rise to such "claim" is given.

**Plaintiff's Fact No. 18.** It is disputed that Yellowstone Mountain Club officers and directors were insured against liability under the Cincinnati Policy for all "wrongful acts". (Pls. Fact No. 18). This statement interprets a policy provision and, hence is a conclusion of law rather than a statement of fact that should be excluded by this Court. *Neal v. Juarez*, 2007 U.S. Dist. LEXIS 98068 (S.D. Cal. July 23, 2007) (The Court excludes factual assertions that are immaterial or that are conclusions of law rather than statements of fact.); *Nanak Resorts, Inc. v. Haskins Gas Serv. (In re Rome Family Corp.)*, 407 B.R. 65, 68 (Bankr. D. Vt. 2009) (The Court has omitted repetitive statements, statements making legal conclusions, or statements of facts that are not material to this dispute); *Kilroy v. Ruckelshaus*, 738 F.2d 1448, 1452 (9th Cir. Cal. 1984) (The court was not obligated to accept legal conclusions as true simply because they were characterized them as statements of fact.)

This statement is disputed because coverage under the Policy is subject to all terms, conditions and exclusions of the Policy, including, but not limited to the requirement that a "loss" result from a "claim" first made during January 31, 2008 to January 31, 2009 Policy Period against the "directors and officers" for a "wrongful act", as each of those terms are

16

defined in the Cincinnati Policy. (Policy) Therefore, directors and officers are not insured for all "wrongful acts".

**Plaintiff's Fact No. 19.** Cincinnati does not dispute Fact 19.

**Plaintiff's Fact No. 20.** Pls. Fact No. 20, that "at least as of October 2, 2009, CIC knew that it needed relief from the automatic stay to spend down her limits" is disputed since the cited evidence (Pl. Ex. 14) does not support Pls. Fact No. 20. The October 2, 2009 letter, addressed to Edra Blixseth's counsel, Gary Deschenes, states the following: "in order for Cincinnati to pay fees in the defense of Ms. Blixseth, Cincinnati must file a motion in the bankruptcy proceeding to obtain relief from the stay. We therefore need confirmation of the defense arrangements and that Ms. Blixseth seeking reimbursement for any fees incurred by your firm in the defense of Ms. Blixseth in the *Snow* action."

In addition, the statement that the Policy limits were "her [Edra Blixseth's] limits" is a conclusion of law rather than a statement of fact that should be excluded by this Court. *Neal v. Juarez*, 2007 U.S. Dist. LEXIS 98068 (S.D. Cal. July 23, 2007) (The Court excludes factual assertions that are immaterial or that are conclusions of law rather than statements of fact.); *Nanak Resorts, Inc. v. Haskins Gas Serv. (In re Rome Family Corp.)*, 407 B.R. 65, 68 (Bankr. D. Vt. 2009) (The Court has omitted repetitive statements, statements making legal conclusions, or statements of facts that are not material to this dispute); *Kilroy v. Ruckelshaus*, 738 F.2d 1448, 1452 (9th Cir. Cal. 1984) (The court was not obligated to accept legal conclusions as true simply because they were characterized them as statements of fact.)

The legal conclusion that the Policy limits belonged to Ms. Blixseth is disputed for all the reasons stated in Cincinnati's Brief Opposing Richardson's summary judgment motion which is

incorporated herein.

**Plaintiff's Fact No. 21.** Plaintiffs Fact No. 21 ["On February 3, 2010, the YCW Chapter Trustee tendered the claim directly to CIC"] is disputed.

First, the reference to the word claim in Fact No. 20 is a conclusion of law rather than a statement of fact, because the issue of whether the matters referenced in Ex. 18, the February 3, 2010 letter, are a "claim" is a question of law based on the interpretation of the Policy wording. This conclusion of law should be excluded by this Court. *Neal v. Juarez*, 2007 U.S. Dist. LEXIS 98068 (S.D. Cal. July 23, 2007) (The Court excludes factual assertions that are immaterial or that are conclusions of law rather than statements of fact.); *Nanak Resorts, Inc. v. Haskins Gas Serv. (In re Rome Family Corp.)*, 407 B.R. 65, 68 (Bankr. D. Vt. 2009) (The Court has omitted repetitive statements, statements making legal conclusions, or statements of facts that are not material to this dispute); *Kilroy v. Ruckelshaus*, 738 F.2d 1448, 1452 (9th Cir. Cal. 1984) (The court was not obligated to accept legal conclusions as true simply because they were characterized them as statements of fact.)

Second, the cited evidence (Pl. Ex. 18) requested payment of the matters identified in the letter.

**Plaintiff's Fact No. 22.** Plaintiff's Fact No. 22 is disputed. The cited evidence, a February 4, 2010 letter which is attached at Pl. Ex. 19, does not support the statement that "the YCW Chapter 7 Trustee sent CIC a copy of Judge Peterson's order for mediation of YCW's claims against the Edra Blixseth estate", since the order referenced in Pl. Ex. 16 did not relate to the mediation of Yellowstone Club World's claims against the Edra Blixseth Estate. Pl. Ex. 16 is incomplete because it did not include a copy of Judge Peterson's Order.

18

As reflected in Deft. Ex. N to Victor Peters' Affidavit, the Order referenced in the February 4, 2010 letter was entered in the Yellowstone Club World bankruptcy proceedings, and relates to a February 11, 2010 mediation of the lawsuit captioned Ross Richardson v. Timothy Blixseth, et al, Adv. No. 09-00086. The Plaintiffs do not contend in their summary judgment motion that Cincinnati had any duty to defend or indemnify this adversary proceeding, and, consequently, Fact No. 22 is irrelevant. Moreover, the Order attached to the February 4, 2010 letter makes no reference to a mediation of Yellowstone Club World's claims against Edra Blixseth's estate.

**Plaintiff's Fact No. 23.** Plaintiff's Fact No. 23 is disputed. The cited evidence, Pl. Ex. 20, stated that the mediation may include Samson's potential claims against Timothy L. Blixseth.

**Plaintiff's Fact No. 24.** Plaintiff's Fact No. 24 is disputed. The cited evidence, Pl. Ex. 21, stated that the mediation may include Samson's potential claims against Timothy L. Blixseth.

**Plaintiff's Fact No. 25.** Plaintiff's Fact No. 25 that "Judge Peterson issued an order setting a mediation conference for February 17, 2010 on the YCW Chapter 7 Trustee's Proof of Claim #46" is disputed because the cited evidence, Pl. Ex. 22, does not identify Proof of Claim #46.

**Plaintiff's Fact No. 26.** Plaintiffs Fact No. 26 is disputed as the cited evidence, Pl. Ex. 23, does not support Pls. Fact No. 26. Pl. Ex. 23 does not state that Cincinnati would not respond to the Yellowstone Club World Chapter 7 Trustee's attempts to communicate. Pl. Ex. 23, the February 17, 2010 letter, written by Victor Peters, responded to Attorney John Amsden's

19

communications. In Pl. Ex. 23, Cincinnati's counsel, states "Please note that neither Ross P.

Richardson nor Yellowstone Club World, LLC are Insured under the policies of insurance that

Cincinnati issued to Yellowstone Mountain Club LLC. Consequently, Cincinnati will not

respond to the items and issues raised in your letters." The February 17, 2010 letter invited

further communication: "should you have any questions please feel free to contact me or my

colleague Rob Fish". (Pl. Ex. 23).

The Yellowstone Club World Chapter 7 Trustee and its counsel, John Amsden, did not

contact Mr. Peters, Mr. Fish or Cincinnati Insurance Company. Yellowstone Club World, the

Trustee of Yellowstone Club World and his counsel did not take exception to the February 17,

2010 letter, respond to that letter, or communicate with Cincinnati regarding its coverage

position. (Aff. of Victor Peters, ¶49, 51); (Aff. of Constance Hennigan ¶33)

**Plaintiff's Fact No. 27.** Plaintiff's Fact No. 27 is disputed because it makes conclusions

of fact that are not supported by the cited exhibit, Pl. Ex. 24.

It is undisputed that the limit of insurance has been exhausted through the payment of

defense costs made with court approval set forth in the November 24, 2009 Order entered in Case

no. 08-61570-11RBK.

**Plaintiff's Fact No. 28.** Plaintiffs Fact No. 28 – "Edra's creditors are different from

YMC creditors" – is disputed because the cited evidence does not support that statement. The

docket for the Edra Blixseth bankruptcy does not reflect that Creditor Source Capital, LLC, a

California LLC, Davis Wright Tremaine LLP, Hall and Hall, Purewest Inc., and HMJZ LLC

filed request for special notice in that proceeding. (Tordai Aff. ¶2, 4)

Plaintiffs Fact No. 28 is irrelevant because the Yellowstone Club World Trustee has

20

admitted that he is the only creditor that filed a claim in Edra Blixseth's Bankruptcy Case which is allegedly covered by the Cincinnati Policy and there are no other creditors in the Edra Blixseth Bankruptcy whose claims are covered by the Cincinnati Policy. (Tordai Aff., ¶6,7)

**Plaintiff's Fact No. 29.** The statement made in fact no. 29 that Cincinnati "deplete[d] an asset of her estate by defending some other officer and director whose claim to coverage was no greater than hers" is a conclusion of law rather than a statement of fact. The issue of whether the Cincinnati Policy is an asset of Edra Blixseth's Bankruptcy estate and whether the Cincinnati Policy affords coverage for Edra Blixseth are questions of law. *Ramsay v. Dowden (In re Central Ark. Broadcasting Co.),* 68 F.3d 213, 214 (8th Cir. Ark. 1995); *Monumental Life Ins. Co. v. Bibo, Inc. (In re Bibo, Inc.)*, 200 B.R. 348, 350 (B.A.P. 9th Cir. Cal. 1996); *Cusenbary v. United States Fid. & Guar. Co.,* 2001 MT 261, P9 (Mont. 2001). These conclusions of law should be excluded by this Court. Neal v. Juarez, 2007 U.S. Dist. LEXIS 98068 (S.D. Cal. July 23, 2007) (The Court excludes factual assertions that are immaterial or that are conclusions of law rather than statements of fact.); Nanak Resorts, Inc. v. Haskins Gas Serv. (In re Rome Family Corp.), 407 B.R. 65, 68 (Bankr. D. Vt. 2009) (The Court has omitted repetitive statements, statements making legal conclusions, or statements of facts that are not material to this dispute); Kilroy v. Ruckelshaus, 738 F.2d 1448, 1452 (9th Cir. Cal. 1984) (The court was not obligated to accept legal conclusions as true simply because they were characterized them as statements of fact.)

Moreover, the cited evidence, ¶27 of the Amsden Affidavit, does not support the legal conclusions that the Cincinnati Policy was "an asset of Edra Blixseth's estate" or that Timothy Blixseth's claim to coverage was "no greater than Edra's".

These legal conclusions are further disputed because Proof of Claim 46 is not covered

by the Cincinnati Policy and Cincinnati was not as a matter of law required to obtain to relief

from the automatic stay in *In re Edra D. Blixseth*, Case No. 09-60452, for all the reasons stated

in its Brief Opposing Plaintiff's Motion for Summary Judgment, which is incorporated herein.

**Plaintiff's Fact No. 30.** Plaintiff's Fact No. 30 is disputed because the statement

that the Estate is "insured" ("the Insured Estate") is a conclusion of law. The issue of whether

the Cincinnati Policy affords coverage for Estate of Edra Blixseth is a question of law for

resolution by this Court. *Cusenbary v. United States Fid. & Guar. Co.* 2001 MT 261, P9 (Mont.

2001). For the reasons stated in Cincinnati's Brief Opposing Plaintiff's Motion for Summary

Judgment, which is incorporated herein, that issue is disputed.

Plaintiff's Fact No. 30 is also disputed because the Estate of Edra Blixseth stipulated to

an allowed claim on January 18, 2011 through document number 857. (Tordai Aff. ¶8 and Ex.

U)

**Plaintiff's Fact No. 31.** Plaintiff's Fact No. 31 is disputed because the cited evidence (Pl.

Ex. 26) states that on April 6, 2011, the Court approved the Amended Stipulation for Allowance

of Claim No. 46 and Relief from Stay to Pursue insurer, with all of the insurer's rights reserved.

### Defendant's Statement of Facts
### That Require Denial of Plaintiff's Motion for Summary Judgment

**Deft. Fact No. 1.** Cincinnati issued Blue Chip Policy Number BCP 877 98 27 to

Yellowstone Mountain Club, LLC ("Mountain Club") for the policy period of January 31, 2008

to January 31, 2009. (Hennigan Aff. ¶3)

**Deft. Fact No. 2.** The Cincinnati Policy is a claims made Policy. Coverage under

the Policy is limited to "loss" resulting from "claims" which are first made against the "policy

insureds" during the "policy period" for a "wrongful act". (Hennigan Aff. ¶3, Ex. Q;

Declarations, Part I., Section I.A.)

**Deft. Fact No. 3.** On January 30, 2009, Matthew Sekits, counsel for Yellowstone

Mountain Club, sent two letters to Cincinnati on behalf of Yellowstone Mountain Club which

gave Cincinnati notice pursuant to Section V of the Policy of certain specific "wrongful acts"

Yellowstone Mountain Club became aware of "that are likely to give rise to a 'claim'" against

Mountain Club or other policy insureds. (Peters Aff. ¶3, Ex. A). Mr. Sekit's letters identified

the following specific "wrongful acts":

> Yellowstone has become aware of transfers of assets to person and/or entities
> outside Yellowstone without proper authorization or in violation of applicable
> law. These unauthorized transfers could result in injury and damage to
> Yellowstone's creditors.  Yellowstone first became aware of these unauthorized
> transfers after it filed for bankruptcy, while it was reviewing its internal financial
> documents. *Id.*

**Deft. Fact 4.** Mr. Sekit's January 30 letters tendered to Cincinnati Mountain Club's and

the policy insureds' defense against, and indemnity for, any and all claims that may arise out of

the transfer of Mountain Club's assets to persons and/or entities outside Mountain Club without

proper authorization or in violation of applicable law. *(Id.)*

**Deft. Fact 5.** Cincinnati responded to Mr. Sekit's January 30 letters, confirming, as Mr.

Sekits had stated, that no "claim" had yet been made against any "policy insured" and requesting

that Cincinnati be given immediate notice if a "claim" is made. (Peters Aff. ¶4, Ex. C)(Hennigan

Aff. ¶6)

**Deft. Fact 6.** On March 9, 2009 Mountain Club notified Cincinnati of three claims:

*Snow v. Timothy Blixseth, Edra Blixseth, et al.* (AP No. 09-00018, Mountain Club Bankruptcy,

"AP18"), *Official Committee of Unsecured Creditors v. BLX Group, et al* (filed in the Mountain

Club bankruptcy and referred to as the "Unsecured Creditors I Lawsuit"), and *Official Committee*

*of Unsecured Creditors v. Credit Suisse*, (AP No. 09-00014 in the Mountain Club Bankruptcy,

"AP14"). (Peters Aff. ¶5, Ex. D (Hennigan Aff. ¶7)

**Deft. Fact 7.** Because AP18 alleged "wrongful acts" of which Cincinnati was given

notice on January 30, 2009, that is, the improper transfer of funds to persons outside of Mountain

Club, Cincinnati agreed to defend Tim and Edra Blixseth in AP18 for their wrongful acts as

directors or officers of Mountain Club. (Peters Aff. ¶6, Ex. E) (Hennigan Aff. ¶7)

**Deft. Fact 8.** Mountain Club directed Cincinnati to contact Edra Blixseth through her

counsel, Gary Deschenes. (Peters Aff., ¶7, Ex. F; ¶8)

**Deft. Fact 9.** Cincinnati sent correspondence to Mr. Deschenes on July 24, August 19,

and October 2, 2009, requesting that Cincinnati be contacted so that defense arrangements could

be made for Edra's defense of A18. (PA, ¶9, 11, 13 and Exs. G, H and I)

**Deft. Fact 10.** No one contacted Cincinnati regarding Edra's defense of AP18 or

responded to the July 24, August 19 and October 2, 2009 letters. (Peters Aff. ¶10, 12, 14, 15)

**Deft. Fact 11.** Timothy Blixseth and Cincinnati agreed that Tim could utilize counsel of

his choice to defend AP18, and that Cincinnati, in accordance with its Policy obligations, would

reimburse his defense costs subject to a reservation of rights. (Victor Peters Aff. ¶16)

**Deft. Fact 12.** On April 3, 2009, the Committee of Unsecured Creditors filed a

counterclaim against Timothy Blixseth and Credit Suisse in Adversary Proceeding No. 14, of

which Cincinnati was notified by Tim's counsel. (Victor Peters Aff. ¶17; Hennigan ¶8)

**Deft. Fact 13.** Pursuant to its defense obligations, Cincinnati agreed to advance

reasonable and necessary attorney fees and expenses incurred by Tim to defend the AP14 counterclaim subject to a full and complete reservation of rights. (Victor Peters Aff. ¶14) (Constance Hennigan Aff. ¶8)

**Deft. Fact 14.** The Cincinnati Policy was issued to and purchased by Mountain Club, who had filed a bankruptcy petition on November 10, 2008. (Victor Peters Aff. ¶18)

**Deft. Fact 15.** Because Mountain Club owned the Policy, on November 10, 2009 Cincinnati filed a motion for relief from the stay in the Mountain Club bankruptcy requesting the entry of an Order allowing it to defend and advance defense costs for Tim's defense of AP18 and AP14. (Victor Peters Aff. ¶19, Ex. K)

**Deft. Fact 16.** Notice of the motion was given through the ECF system to Edra Blixseth's counsel, the YCW Trustee, his counsel, and Edra's Trustee's counsel, all of whom had previously filed requests for special notice in the Mountain Club bankruptcy. (NKT Aff. ¶9, Ex. V) and they were notified that the Court would consider Cincinnati's Motion on November 24, 2009 in the absence of a timely objection. (Tordai Aff. ¶10, Ex. W)

**Deft. Fact 17.** Edra, the YCW Trustee and Edra's Trustee did not object to Cincinnati's Motion. (Tordai Aff. ¶11, Ex. X, Order Stating No Objection Made)

**Deft. Fact 18.** On November 24, 2009, the Court entered an Order permitting Cincinnati to pay Tim Blixseth's defense costs, and holding that the payment of Tim's defense costs for AP18 and AP14 reduces the Policy's limit of liability by the amount paid. (Tordai Aff. ¶11, Ex. X)

**Deft. Fact 19.** Edra, the YCW Trustee and Edra's Trustee were served with the November 24 Order. (Tordai Aff. ¶12, Ex. Y)

**Deft. Fact 20.** Edra, the YCW Trustee and Edra's Trustee have filed no motion requesting that the Court reverse or set aside the November 24 Order. (Tordai Aff. ¶13)

**Deft. Fact 21.** Relying upon the November 24 Order, and the absence of any objection to it, and in accordance with its obligations under the Policy, Cincinnati provided Tim with a defense by reimbursing the fees and costs that he incurred in defense of AP18 and AP14. (Victor Peters Aff. ¶13) (Victor Peters Aff. ¶23) (Constance Hennigan Aff. ¶14)

**Deft. Fact 22.** The $5 million limit of liability was exhausted by November 2010. (Victor Peters Aff. ¶23) (Constance Hennigan Aff. ¶14)

**Deft. Fact 23.** As of that date, Cincinnati no longer had any further obligation under the Policy. (Policy, Part I., Section III)

**Deft. Fact 24.** Prior to February 3, 2010, Cincinnati paid $1,547,052.39 of the Policy limits for the defense of AP14 and AP18 pursuant to the Court's November 24, 2009 Order and another $319,389.58 of fees and costs had been incurred which Cincinnati had agreed to pay. (Hennigan Aff. ¶10, 11)

**Deft. Fact 25.** On February 3, 2010 after the close of business at Cincinnati, Attorney John Amsden, counsel for the YCW Trustee, faxed a letter to the "Casualty Claims Manager" at Cincinnati on behalf of the YCW Trustee. (Hennigan Aff. ¶15; Peters Aff. ¶24, Ex. M)

**Deft. Fact 26.** The February 3, 2010 letter requested that Cincinnati pay Proof of Claim No. 664-1 and 664-2 filed in the Mountain Club bankruptcy, Proof of Claim No. 46-1 and 46-2 filed in Edra's bankruptcy and pay a Second Amended Complaint that was filed in *Richardson v. Blixseth and Huckestein*. (Peters Aff. ¶24, Ex. M) Copies of these proofs of claim and the *Richardson* complaint were received by Cincinnati on February 4. (Hennigan Aff. ¶15)

26

**Deft. Fact 27.** On November 30, 2009, unknown to Cincinnati, YCW's and Edra's

Trustees stipulated to the entry of a $436,728.63 judgment against Edra's Estate with respect to

Proof of Claim 46 in settlement of *Richardson v. Estate of Edra Blixseth, et al.* (Adv. Pro. 09-

00066). They did not tender that lawsuit for coverage or defense, or request Cincinnati's consent

to the stipulated judgment. The lawsuit and stipulated judgment were not identified in the

February 3 letter or provided to Cincinnati before this insurance coverage litigation was filed.

(Peters Aff. ¶27-29; Peters Aff. ¶24, Ex. M; Hennigan Aff. ¶17; Tordai Aff. ¶14, Ex. Z; Tordai

Aff. ¶15, Ex. AA, p. 27 and Ex. 47 thereto).

**Deft. Fact 28.** By correspondence dated February 4, 2010, Attorney Amsden, writing

solely on behalf of the YCW Trustee, invited Cincinnati to attend a February 11, 2010 mediation

of *Richardson v. Tim Blixseth, et al.* (Peters Aff. ¶16 Ex. N)

**Deft Fact 29.** No insured gave notice of or tendered *Richardson v. Tim Blixseth, et al.* to

Cincinnati for coverage and defense, or requested that Cincinnati attend the February 11, 2010

mediation where *Richardson* was settled. (Peters Aff. ¶27; Hennigan Aff. ¶19; Tordai Aff. ¶16,

Ex. BB reflecting settlement at the February 11 mediation).

**Deft. Fact 30.** No insured contacted Cincinnati regarding the settlement of *Richardson v.

Tim Blixseth et al*, sought Cincinnati's consent to settlement or demanded that Cincinnati

indemnify the settlement. (Peters Aff. ¶28, 29; Hennigan Aff. ¶20, 21).

**Deft Fact 31.** On February 15, 2010 after the close of business, Attorney Amsden faxed

a letter to Cincinnati advising it that a mediation in the Edra Blixseth and Mountain Club

bankruptcies will take place on February 17 in Butte, Montana without identifying the matters to

be mediated. (Peters Aff. ¶26, Ex. O; Hennigan Aff. ¶18).

27

**Deft. Fact 32.** Cincinnati did not receive the February 15 letter until February 16, one day before Attorney Amsden requested that Cincinnati be in Butte, Montana. (Hennigan Aff. ¶18)

**Deft Fact 33.** It was impossible for Ms. Hennigan of Cincinnati to travel from Ohio to Butte Montana in such a short time frame. (Hennigan Aff. ¶18)

**Deft Fact 34.** It was not clear to Cincinnati from the February 15 letter what would be mediated on February 17. (Hennigan Aff. ¶18).

**Deft Fact 35.** Constance Hennigan of Cincinnati Insurance Company was responsible for the Yellowstone Mountain Club Matters. (Hennigan Aff. ¶4)

**Deft Fact 36.** Constance Hennigan of Cincinnati requested that Victor Peters review and respond to Mr. Amsden's correspondence. (Hennigan Aff. ¶31)

**Deft Fact 37.** Mr. Peters reviewed the correspondence and enclosures, the pleadings in AP14 and AP18, the January 30, 2009 Sekits' letters and the Policy. (Peters Aff. ¶40)

**Deft Fact 38.** Mr. Peters determined that the proofs of claim and litigation identified in the February 3 correspondence were filed after the Policy had expired, were not reported to Cincinnati before the Extended Reporting Period expired on April 1, 2009, and had nothing to do with the "wrongful acts" identified in the January 30 letters and that Yellowstone Club World was not an insured. (Peters Aff. ¶41, 43, 44)

**Deft Fact 39.** Attorney Rob Fish of Mr. Peters' office also reviewed the correspondence from Mr. Amsden and enclosures, the pleadings in AP 14 and 18, the January 30, 2009 letters form Attorney Sekits, and the Policy. (Peters Aff. ¶42)

**Deft Fact 40.** Mr. Peters discussed his conclusions with Mr. Fish who had reached the

same conclusions. (Peters Aff. ¶45).

**Deft Fact 41.** Mr. Peters discussed his conclusions with Ms. Hennigan, who had also reviewed the materials, the January 30 letters and the Policy, and agreed with them. (Peters Aff. ¶46; Hennigan Aff. ¶32)

**Deft Fact 42.** Before receiving the February 2010 letters, Mr. Peters was instructed by the only insured who had sought coverage and defense under the Policy, Tim Blixseth, not to prejudice his defense of AP14 and AP18 by communicating with claimants. (Peters Aff. ¶47)

**Deft Fact 43.** Because the Policy required that the insured give Cincinnati notice of claims and that the insured communicate with Cincinnati, because no insured gave Cincinnati notice of the matters identified in the February 3 letter, because Cincinnati was instructed by the only insured who had sought coverage and defense not to prejudice his defense of AP14 and AP18 by communicating with claimants, and because YCW and its Trustee were not insureds, Cincinnati promptly responded to Mr. Amsden with Mr. Peters' February 17 letter. (Peters Aff. ¶48; Hennigan Aff. 32)

**Deft Fact 44.** The February 17, 2010 letter advised Mr. Amsden that Cincinnati would not respond to his request for payment of items and issues raised in his letter, but that he should feel free to contact Mr. Peters or his colleague Rob Fish if he had any questions. (Peters Aff. ¶48 Ex. P)

**Deft Fact 45.** Mr. Amsden and the YCW's Trustee did not contact Mr. Peters, Mr. Fish or Cincinnati. (Peters Aff. ¶49)

**Deft Fact 46.** Cincinnati conducted a reasonable investigation, and its February 17 response was prompt, reasonable and did not misrepresent any Policy provision. Since the

Policy is a claims made policy where defense costs reduce the limits of liability, the insurer cannot accept a claim from anyone other than the insured as to do otherwise will be wasting the protection of the insureds. Communications from other than an insured do not create duties to investigate, evaluate and defend a claim. (Affidavit of Robert Phillips, September 30, 2011 letter attached thereto.)

**Deft Fact 47.** POC 664-1 was filed in the Mountain Club bankruptcy on March 17, 2009 after the Policy expired. It does not describe any claim or wrongdoing allegedly committed by the debtor, and does not evidence an intent to hold the debtor liable. (Ex. M to Peters Aff., bates p. CIC-00064).

**Deft Fact 48.** POC 664-2 was filed on July 20, 2009. (Ex. M to Peters Aff., bates p. CIC-000134).

**Deft Fact 49.** POC 664-1 and 664-2 had nothing to do with the "wrongful acts" identified in the January 30 letters. (Ex. M to Peters Aff., bates p. CIC-00064-00162; Ex. A to Peters Aff.)

**Deft Fact 50.** POC 664-1 and 664-2 were not reported to Cincinnati before February 3, 2010. No insured gave Cincinnati notice of POC 664-1 and 664-2, tendered it for coverage and defense, or demanded Cincinnati indemnify the settlement of POC 664-1 and 664-2. (Peters Aff. ¶30-32; Hennigan Aff. ¶22-24)

**Deft Fact 51.** POC 46-1 was filed in Edra's bankruptcy on July 29, 2009 and POC 46-2 was filed on August 4, 2009 (collectively "POC 46"). (Peters Aff., Ex. M bates page CIC-000336, CIC-000341).

**Deft Fact 52.** POC 46 contains a contingent breach of fiduciary duty to YCW claim

30

with respect to YCW's options and rights of use. It does not state Edra failed to record options and rights of use. (Ex. M to Peters Aff., bates page CIC-000336-368).

**Deft Fact 53.** POC 46 has nothing to do with the "wrongful acts" identified in the January 30 letters. (Ex. M to Peters Aff. Bates page CIC-000336-368; Ex. A to Peters Aff).

**Deft Fact 54.** Edra and her Trustee did not give Cincinnati notice of POC 46, did not tender it to Cincinnati for coverage and defense, and did not communicate at any time with Cincinnati regarding POC 46. (Tordai Aff., ¶15, p. 137; Peters Aff. ¶35-38; Hennigan Aff. ¶27-30).

**Deft Fact 55.** No insured gave Cincinnati notice of POC 46-1 and 46-2. (Hennigan Aff. ¶26; Peters Aff. ¶34)

**Deft Fact 56.** Proof of Claim 46-1 and 46-2 were not reported to Cincinnati before February 3, 2010. (Peters Aff. ¶33; Hennigan Aff. ¶25).

**Deft Fact 57.** Proof of Claim 228-1 ("POC 228-1") and the April 3, 14 and 16, 2009 letters to Danika Investments ("Danika letters") were not identified in or enclosed with the February 3 letter. (Ex. M to Peters Aff., and ¶52)

**Deft Fact 58.** No insured gave Cincinnati notice of POC 228-1 or the Danika letters, or requested that Cincinnati defend or indemnify these matters. These matters were never reported to Cincinnati. (Hennigan Aff. ¶34-40; Peters Aff. ¶53-59)

**Deft Fact 59.** Mr. Peters advised Mr. Blixseth's counsel that he was available to participate by telephone in the February 17 mediation mentioned in Mr. Amsden's letter. No one telephoned Cincinnati's counsel or sought his participation, or requested that Cincinnati make any contribution toward settlement of the matters identified in the February 3 letter. (Peters Aff.

31

¶50).

**Deft Fact 60.** Mr. Amsden, counsel for Richardson, does not recall whether the February 17 mediation actually occurred. (Tordai Aff., ¶17)

**Deft Fact 61.** Mr. Amsden described the February 17 letter to Edra's Trustee and his counsel as a coverage denial. (Tordai Aff. ¶18, statements made in Exhibit DD)

**Deft Fact 62.** Edra's Trustee did not know when Cincinnati should have gotten involved and defended POC 46. (Tordai Aff. ¶15, p. 69)

**Deft Fact 63.** Edra's Trustee and his counsel did not take exception to Cincinnati's coverage position, demand that Cincinnati defend POC 46 or advise Cincinnati that a coverage dispute existed. (Peters Aff. ¶51; Hennigan Aff. ¶33)

**Deft Fact 64.** Edra's Trustee admits he did not communicate with Cincinnati before he stipulated to liability for POC 46 on January 18, 2011. (Tordai Aff. ¶15, p. 137)

**Deft Fact 65.** Even before Cincinnati had a chance to respond, Mr. Amsden on behalf of YCW's Trustee proposed on February 15, 2010 that Edra's Trustee stipulate to pursue Cincinnati. (Tordai Aff. ¶19, Ex. EE)

**Deft Fact 66.** Without any prior notice or communication with Cincinnati, Edra's Trustee and Edra Blixseth consented to stipulate to liability and pursue Cincinnati. (Tordai Aff. ¶20, Ex. FF; ¶21, Ex. GG).

**Deft Fact 67.** YCW's Trustee did not take exception to Cincinnati's coverage position, respond to that coverage position, or communicate with Cincinnati. (Peters Aff. ¶51; Hennigan Affidavit ¶33)

**Deft Fact 68.** In August or September 2010, the YCW Trustee's counsel again proposed

32

that Edra's Trustee resolve POC 46 by agreeing to a stipulated amount and pursing Cincinnati for payment. (Tordai Aff. ¶15, p. 41-43)

**Deft Fact 69.** Edra's Trustee wanted to resolve POC 46, and Mr. Amsden had proposed the solution. (Tordai Aff. ¶15, p. 104, 113)

**Deft Fact 70.** Mr. Amsden sent draft stipulations to Edra's Trustee describing the options and rights of use issue regarding Farcheville and St. Andrews. Every draft stipulation and the stipulation filed with the Court on January 18, 2011 stated that Edra Blixseth was an officer, director and/or managing agent of YCW and Development and that she did not record the options and rights of use on behalf of YCW and Development. (Tordai Aff. ¶17, p. 121, 125, 126, 131 and Exhibits 87, 93, 96, 100)

**Deft Fact 71.** Edra stated in response to Request for Admission that she was an officer, director and/or management agent of YCW and Development and that she did not record the options and rights of use on behalf of YCW and Development. (Tordai Aff. ¶23, Ex. II)

**Deft Fact 72.** Edra refused to admit she had any obligation to record the options and rights of use, her Trustee stipulated to liability. (Tordai Aff. ¶22 Ex. HH; ¶1, Ex. R. p. 49, 50, 54, 74; ¶22 Ex. HH)

**Deft. Fact 73.** YCW's Trustee states in the January 18, 2011 motions filed with this Court that POC 46 "aris[es] out of Edra's prepetition conduct in failing, as an officer and/or director of YCW, to protect YCW's interests in various matters, including in the French [Farcheville] and Scottish [St. Andrews] developments involving YCW." YCW's Trustee also stated that the Policy is not subject to the automatic stay of Edra's bankruptcy. (Tordai Aff. ¶24, 25, Ex. JJ, KK)

**Deft Fact 74.** After Cincinnati filed objections stating that YCW is not an insured under the Policy, and Edra, as director and officer of YCW is not insured, the Trustees submitted an amended stipulation on March 31, 2011 which removed all reference to YCW. (Tordai Aff. ¶26, Ex. LL, MM).

**Deft Fact 75.** Cincinnati promptly provided a reasonable explanation of the basis in the insurance policy for denial of Edra's Trustee's claim first made in the January 18 pleadings that Cincinnati owed him defense and coverage for POC 46. (Phillips Affidavit and attached letter)

**Deft Fact 76.** YCW's claim in the French liquidation proceedings was €8,073,464.21. The French judge rejected all but €3,437,073.21 because YCW did not provide evidence it had an option to purchase or right to use the real property, and because it did not exercise the option or demonstrate the willingness to acquire Farcheville. (Affidavit of Sid Ahmed)

**Deft Fact 77.** YCW recovered $8 million from Farcheville and $306,000 from St. Andrews. (Tordai Aff. ¶27, Ex. NN)

## II.    Defendant Cincinnati Insurance Company's Motion for Summary Judgment

Cincinnati Insurance Company filed its motion on October 7, 2011, also seeking summary judgment on all four counts of the First Amended Joint Complaint.  The Motion is accompanied by a brief and an Affidavit of Constance S. Hennigan with attached exhibit A, an Affidavit of  Victor C. Peters with attached exhibits B, C, D, E, F, G, H, I, K, L, M, N, O and P, and an Affidavit of Nancy K. Tordai with attached exhibits Q through Z and AA through HH and eight other exhibits identified by name rather than alphabetic figure.  Plaintiff Richard Samson filed a reply to Cincinnati Insurance Company's motion on October 28, 2011.  Richardson also filed on October 28, 2011, a reply to Cincinnati Insurance Company's motion with attached

exhibits 1 through 9 and a statement of genuine issues with attached exhibit 1.

Cincinnati Insurance Company asserts the following are undisputed facts:

Cincinnati issued claims made Blue Chip Policy No. BCP 877 98 27 to Yellowstone Mountain Club, LLC ("Mountain Club") for the January 31, 2008 to January 31, 2009 policy period. Coverage under the Policy is limited to "loss" resulting from "claims" which are first made against "policy insureds" during the "policy period" for a "wrongful act". (Statement of Undisputed Facts ("SOF") 1-3) "Policy insureds" include Mountain Club, Yellowstone Development ("Development"), and their directors, officers and employees. It is undisputed that Yellowstone Club World ("YCW") and its directors, officers and employees are not insureds under the Policy. (SOF 6-12) The Policy contains an aggregate limit of $5 million, which is the maximum amount available to satisfy all "claims". The limit of insurance is reduced by all "loss" payments, including defense fees and costs. (SOF 21, 22, 24)

On January 30, 2009, one day before the Policy expired, Matthew Sekits, counsel for Mountain Club, sent two letters to Cincinnati which provided notice of the following specific "wrongful acts" that Mountain Club became aware of while it was reviewing its internal financial documents "that are likely to give rise to a 'claim'" against Mountain Club or other policy insureds:

> Yellowstone has become aware of transfers of assets to person and/or entities
> outside Yellowstone without proper authorization or in violation of applicable
> law.  These unauthorized transfers could result in injury and damage to
> Yellowstone's creditors.  Yellowstone first became aware of these unauthorized
> transfers after it filed for bankruptcy, while it was reviewing its internal financial
> documents.

The January 30 letters recognized that no "claim" had yet been made. Cincinnati requested it be

given immediate notice when a "claim" is made. (SOF 25)

On March 9, 2009 Mountain Club notified Cincinnati of *Snow v. Timothy Blixseth, Edra Blixseth, et al.,* ("AP18") and *Official Committee of Unsecured Creditors v. Credit Suisse,* ("AP14"). Cincinnati agreed to defend Tim and Edra Blixseth in AP18 for their wrongful acts as directors or officers of Mountain Club subject to a reservation of rights. Mountain Club directed Cincinnati to contact Edra through her counsel Gary Deschenes. Cincinnati sent three letters to Mr. Deschenes to make defense arrangements for Edra. No one contacted Cincinnati regarding Edra's defense of AP18. The Plaintiffs do not seek coverage or defense for AP18 or allege any wrongdoing with respect to AP18. (SOF 27-32)

Tim Blixseth responded, the parties agreed that Tim could utilize counsel of his choice to defend AP18, and that Cincinnati, in accordance with its Policy obligations, would reimburse his defense costs subject to a reservation of rights. On May 15, 2009, Tim Blixseth's counsel gave Cincinnati notice of the April 3, 2009 counterclaim that was filed against him in AP14. Cincinnati agreed to advance reasonable and necessary attorney fees and expenses incurred by Tim to defend the AP14 counterclaim subject to a full and complete reservation of rights. (SOF 33-34)

Because Mountain Club, the entity who had purchased and owned the Policy, had filed a bankruptcy petition, Cincinnati filed a motion on November 10, 2009 in the Mountain Club bankruptcy requesting the entry of an Order allowing it to defend and advance defense costs for Tim's defense of AP18 and AP14. (SOF 35-36) Tim was the only insured who had sought coverage and defense from Cincinnati at that time. (SOF 37) Notice of the motion was given through the ECF system to Edra Blixseth through her counsel, Gary Deschenes, the YCW

36

Trustee, Richardson, his counsel, John Amsden and Edra's Trustee through his counsel, David Cotner, and they were notified that the Court would consider Cincinnati's Motion on November 24, 2009 in the absence of a timely objection. The YCW Trustee, Edra and Edra's Trustee did not object to Cincinnati's Motion. (SOF 38)

On November 24, 2009, the Court, finding that there were no objections, entered an Order authorizing Cincinnati to pay Tim Blixseth's defense costs, and holding that the payment of Tim's defense costs for AP18 and AP14 reduces the Policy's limit of liability by the amount paid. Edra, the YCW Trustee and Edra's Trustee who were served with the November 24 Order did not object to it, or request it be reversed, modified or set aside. (SOF 39-42)

Relying upon the November 24 Order, and the absence of any objection to it, and in accordance with its obligations under the Policy, Cincinnati provided Tim with a defense by reimbursing the fees and costs that he incurred in defense of AP18 and AP14. (SOF 43) As this Court held, the payment of these fees and costs reduced the $5 million limit of liability by the amount paid. (SOF 40) By February 3, 2010, the Policy limit was reduced to $3,133558.03 due to payments and amounts owed for defense costs. (SOF 45)

On February 3, 2010 John Amsden, counsel for the YCW Trustee, faxed a letter to Cincinnati requesting that Cincinnati pay Proof of Claim No. 664-1 and 664-2 filed in the Mountain Club bankruptcy on March 17, 2009 and July 20, 2009 respectively ("POC 664-1 and 664-2"), Proof of Claim No. 46-1 and 46-2 filed in Edra's bankruptcy on July 29, 2009 and August 4, 2009 respectively ("POC46-1 and 46-2", collectively "POC 46") and pay a Second Amended Complaint that was filed in November 2009 in *Richardson v. Tim Blixseth*. Copies of the proofs of claim and the *Richardson* complaint were received by Cincinnati on February 4.

37

(SOF 46-47) No insured requested that Cincinnati defend or indemnify POC 664-1, 664-2, 46-1, 46-2 or the *Richardson v. Tim Blixseth* litigation. No insured gave Cincinnati notice of POC 664-1, 664-2, 46-1, 46-2 and *Richardson v. Tim Blixseth*. Edra's Trustee, Samson, did not request that Mr. Amsden tender the defense of POC 46 to Cincinnati. (SOF 48, 51, 71, 76, 77) At no time did Edra's Trustee or his counsel, Cotner, demand that Cincinnati defend POC 46 or give Cincinnati notice of POC 46. Edra did not request that Cincinnati defend POC 46. It is undisputed that Edra's Trustee did not communicate with Cincinnati before he stipulated to liability for POC 46 on January 18, 2011. (SOF 76, 82-84)

On November 30, 2009, more than two months before the February 3 letter was sent, unknown to Cincinnati, YCW's and Edra's Trustees stipulated to the entry of a $436,728.63 judgment against Edra's Estate with respect to POC 46 in settlement of *Richardson v. Estate of Edra Blixseth, et al.* (Adv. Pro. 09-00066). Edra's Estate did not give Cincinnati notice of that lawsuit, tender it for coverage or defense, or request Cincinnati's consent to the stipulated judgment. The lawsuit and stipulated judgment were not identified in the February 3 letter or provided to Cincinnati before this insurance coverage litigation was filed. (SOF 49)

In his February 4, 2010 letter, Mr. Amsden invited Cincinnati to attend a February 11, 2010 mediation of *Richardson v. Tim Blixseth, et al.* (Ex. 10). No insured requested that Cincinnati attend the February 11, 2010 mediation where *Richardson* was settled, or demanded that Cincinnati indemnify that settlement. (SOF 50-52)

On February 15, 2010, Mr. Amsden faxed a letter to Cincinnati advising it that mediation in the Edra Blixseth and Mountain Club bankruptcies will take place on February 17 in Butte, Montana without identifying the matters to be mediated. Cincinnati did not receive the letter

until February 16. Mr. Peters was available to participate in the February 17 mediation by telephone. (SOF 53-56; 81)

Cincinnati promptly responded to Mr. Amsden's correspondence on February 17, 2010. That letter advised him that YCW was not an insured and Cincinnati would not respond to his requests in writing, but that he should feel free to contact Mr. Peters or his colleague Rob Fish if he had any questions. Mr. Amsden and the YCW's Trustee did not contact Mr. Peters, Mr. Fish or Cincinnati. (SOF 65-67)

The $5 million limit of liability was exhausted by November 2010. (SOF 44) On January 18, 2011, the YCW Trustee and Edra's Trustee stipulated to allow POC 46 in the amount of $9,699,455 to be recovered only from Cincinnati. The January 18, 2011 stipulation, and every draft stipulation that predated it, stated that YCW was damaged because Edra, on behalf of YCW and YD failed to record YCW's options to purchase and a rights to use Farcheville and St. Andrews. (SOF 86, 88-89) Edra admitted that she acted on behalf of YD and YCW when she did not record the options and rights of use. (SOF 87) After Cincinnati objected to the stipulations and motions, pointing out that YCW was not an insured, the Plaintiffs on March 31, 2011 filed an amended stipulation removing all reference to YCW. (SOF 90)

The YCW Trustee never requested that Cincinnati pay Proof of Claim 228 ("POC 228") or three letters that had been sent to Danika Investments, and did not provide copies of them to Cincinnati before filing suit against Cincinnati. No insured has given Cincinnati notice of or requested coverage or defense of POC 228 or the Danika Letters, or of the settlement of POC 228 and 664. (SOF 79-80)

Plaintiff Richard Samson filed a response to Cincinnati Insurance Company's motion on

October 28, 2011.  Plaintiff Richard Samson, however, did not file a separate statement of

genuine issues in accordance with Mont. LBR 7056-1(a)(2).[4]

Richardson filed a pleading titled statement of genuine issues, but the issues are muddled

with facts and argument.  Given the nature of the pleading, the Court will not attempt to recite

the genuine issues of material fact here.

### III.  Applicable Summary Judgment Law

Summary judgment is governed by F.R.B.P. 7056.  Rule 7056, incorporating

FED.R.CIV.P. 56(c), states that summary judgment "should be rendered if the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law."  "The

proponent of a summary judgment motion bears a heavy burden to show that there are no

disputed facts warranting disposition of the case on the law without trial."  *Younie v. Gonya (In

re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (quoting *Grzybowski v. Aquaslide "N' Dive

Corp. (In re Aquaslide "N" Dive Corp.)*, 85 B.R. 545, 547 (9th Cir. BAP 1987)).  The manner in

which this burden is proven depends on which party has the burden on a particular claim or

defense at the time of trial.

> If the *moving* party will bear the burden of persuasion at trial, that party must
> support its motion with credible evidence–using any of the materials specified in
> Rule 56(c)–that would entitle it to a directed verdict if not controverted at trial.
> Such an affirmative showing shifts the burden of production to the party opposing
> the motion and requires that party either to produce evidentiary materials that
> demonstrate the existence of a "genuine issue" for trial or to submit an affidavit

---

[4]  Mont. LBR-1(a)(2) reads in relevant part: "A separately identified, short, and concise
'Statement of Genuine Issues', setting forth the specific facts which the opposing party asserts
establish a genuine issue of material fact precluding summary judgment in favor of the moving
party, must be filed by the party opposing the motion together with an opposition brief."

requesting additional time for discovery.  If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 330-34, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986) (Brennan dissent) (citations omitted). *See also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-06 (9th Cir. 2000) (discussing burdens for withstanding summary judgment).

When seeking summary judgment, the moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact.  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987).  If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986), *cert. denied*, 469 U.S. 949 (1986); FED. R. CIV. P. 56(e).  *See also Frederick S. Wyle Prof'l. Corp. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985) ("the opponent must affirmatively show that a material issue of fact remains in dispute").  That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  Moreover, "[a] party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment."  *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

To demonstrate that a genuine factual issue exists, the objector must produce affidavits

41

which are based on personal knowledge and the facts set forth therein must be admissible into evidence. *Aquaslide*, 85 B.R. at 547. All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Liberty Lobby,* 477 U.S. at 247-48, 106 S.Ct. at 2509. However, "[d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv.*, 809 F.2d at 630 (citing *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense." *Id.*

The evidence and inferences therefrom must be viewed in the light most favorable to the nonmoving party. *In re Healthcentral.com*, 504 F.3d 775, 788 (9th Cir. 2007) (citing *Jewel Cos. v. Pay Less Drug Stores Northwest, Inc.*, 741 F.2d 1555, 1559 (9th Cir.1984). If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied. *T.W. Elec. Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 202 (1986). Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence. *T.W. Elec. Serv.*, 809 F.2d at 631. In the absence of any disputed material facts, the inquiry shifts to whether the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53.

## IV.    Discussion

The Court has included in this Memorandum of Decision roughly 36 pages of both

alleged undisputed and disputed material facts, all involving the same counts of a complaint. The Court can think of no situation where so many facts would not produce at least one disputed material fact that would preclude entry of summary judgment. Rather than narrowing the issues of this proceeding, it appears the parties have endeavored to provide the Court with a preview of the upcoming trial. However, neither the Plaintiffs nor the Defendant are entitled to judgment as a matter of law at this juncture.

In the first motion for summary judgment, Richardson asserts he is entitled to judgment against Cincinnati Insurance Company in the amount of $9.6 million under a "Directors & Officers" liability policy issued by Cincinnati Insurance Company that covered Edra D. Blixseth. Richardson contends various claims were submitted against Edra Blixseth's bankruptcy estate (the "Insured Estate"), including by Richardson. Richardson maintains that Cincinnati Insurance Company failed to defend the Insured Estate despite a clear potential for coverage in the Policy for the YCW Chapter 7 Trustee's Proof of Claim. Richardson argues Cincinnati refused to respond to tenders of the defense of these claims from both the named insured corporate entity whose officers and directors were covered by the Policy, and the YCW Chapter 7 Trustee. The Insured Estate and the YCW Chapter 7 Trustee mediated the YCW Chapter 7 Trustee's claim against the Insured Estate. Cincinnati Insurance Company was notified of the mediation, but declined to participate.

Richardson also argues that subsequent to Edra D. Blixseth's bankruptcy petition date, Cincinnati spent-down the limits of the Directors & Officers liability policy by defending other directors and officers. Richardson argues that such action by Cincinnati violates the automatic stay of 11 U.S.C. § 362(a).

43

Based upon the above alleged facts, Richards argues: (1) Cincinnati had a duty to defend Edra D. Blixseth's insured estate, because the claims against the Estate potentially implicated coverage under the policy and that Cincinnati breached its duty by failing to provide a defense; (2) Cincinnati committed *per se* violations of Montana's Unfair Trade Practices Act by refusing to respond to Richardson's tender and by denying coverage without conducting a reasonable investigation of the claims, indeed without conducting any investigation at all; (3) Cincinnati's conduct in (allegedly) paying down the policy limits without obtaining relief from the automatic stay in Edra D. Blixseth's bankruptcy proceeding violated the automatic stay protecting all estate assets; and (4) under controlling Montana law, Cincinnati's breach of its duty to defend renders it liable for the entire amount of Richardson's allowed claim in the amount of $9.6 million.

As a threshold issue, this Court must determine whether a claim was timely filed under the Policy. Without such a claim, no duty arises for Cincinnati to defend the Edra Blixseth Estate. Interpreting all evidence and inferences in the light most favorable to the nonmoving party, this Court concludes there is a genuine issue of material fact as to whether a claim was timely filed.

The facts show that Matthew J. Sekits, counsel for YMC, sent Cincinnati Insurance Company a letter dated January 30, 2009, advising:

> Yellowstone has become aware of "wrongful acts" that are likely to give rise to a "claim" to which the Cincinnati policy applies.
>
> More specifically, Yellowstone has become aware of transfers of assets to persons and/or entities outside Yellowstone without proper authorization or in violation of applicable law. These unauthorized transfers could result in injury and damage to Yellowstone's creditors. Yellowstone first became aware of these unauthorized transfers after it filed for bankruptcy, while it was reviewing its internal financial documents.

44

The letter further recites that "with this letter, Yellowstone formally tenders to Cincinnati the defense against, and indemnity for, any and all claims against all other insureds, including all individual directors, officers, and employees of Yellowstone[.]"

Cincinnati responded by letter dated March 23, 2009, stating that a lawsuit captioned *Michael Snow, et al. v. BLX Group, Inc., et al.*, was a claim first made on January 30, 2009, and further stating it was agreeable to extending a defense to Debtor and Timothy Blixseth for the *Snow* lawsuit. Cincinnati maintained no coverage was available under the Policy for claims associated with lawsuits identified as the Unsecured Creditors I lawsuit or the Unsecured Creditors II lawsuit. Finally, Cincinnati asked YMC's counsel to provide a list of officer and director positions held by Debtor and Timothy Blixseth with YMC, including the time period during which they held each position.

In the interim, an involuntary Chapter 7 bankruptcy petition was filed against Yellowstone Club World, LLC on January 25, 2009. Not long thereafter, Richardson filed on March 17, 2009, Proof of Claim No. 664 in YMC's bankruptcy case, asserting an estimated unsecured claim of $50 million. Richardson filed on March 18, 2009, the same estimated claim, Proof of Claim No. 228, in Yellowstone Developments bankruptcy.[5]

Debtor subsequently filed a Chapter 11 bankruptcy petition on March 26, 2009. Richardson filed Proof of Claim No. 46 on July 29, 2009, asserting a claim in the amount of $103,587,987. Richardson amended Proof of Claim No. 46 on August 4, 2009, still asserting a

---

[5] On July 20, 2009, Richardson amended Proof of Claim No. 664 in YMC's bankruptcy and Proof of Claim No. 228 in Yellowstone Development's bankruptcy to increase the claim amount to $103,587,987, of which $4,190,000 was asserted as priority. The nature of the balance of the claim in the amount of $99,397,987 is listed on the Court's claims register as unknown.

total claim of $103,587,987. Richardson contends his claims, as reflected in Proof of Claim Nos. 664, 228 and 46 relate back to Mr. Sekits January 30, 2009, letter to Cincinnati Insurance Company which advised of "'wrongful acts' that are likely to give rise to a 'claim' to which the Cincinnati policy applies."

The Court finds a factual dispute as to whether YCW's proofs of claim relate back to earlier notices received by Cincinnati. The broad and imprecise language of Mr. Sekit's January 30 letter fails to conclusively establish that Cincinnati received notice of the wrongful conduct claimed in YCW's proofs of claim. A factual dispute exists as to whether Cincinnati received any other information, such as Proof of Claim Nos. 664 and 228, or the Danika Letters, prior to the end of the time permitted to make claims under the policy and whether they would be relevant to determining when claims were made.

In addition, after interpreting all evidence and inferences in the light most favorable to the nonmoving party, this Court determines that Richardson has failed to overcome the burden of establishing that there is no genuine issue of material fact as to when and under what circumstances Cincinnati denied the claim of Edra Blixseth seeking legal defense. Factual disputes exist as to the nature and timing of Cincinnati's denial of Proof of Claim No. 46. Cincinnati disputes that its February 17, 2010 letter to Richardson constitutes a denial of coverage to Debtor's estate. Because it is not clear that the letter was a response to a policy insured, there is at least a triable issue of fact precluding summary judgment on this issue. Cincinnati has at least raised a triable issue of fact as to whether it wrongfully denied a tender of defense prior to a breach of a condition precedent by the policy insured in stipulating to damages.

Based on the evidence presented, a rational trier of fact might resolve these issues in

46

favor of the nonmoving party. Therefore, summary judgment must be denied. Having disposed of the issue of summary judgment on this claim, the Court need not identify further genuine issues of material fact which would also be sufficient to deny summary judgment. Nevertheless, the record before the Court suggests numerous factual disputes that preclude summary judgment.

Richardson also seeks summary judgment to determine that Cincinnati committed *per se* violations of the Montana Unfair Trade Practices Act. Each of the alleged *per se* violations requires that Cincinnati acted unreasonably. Under Montana law, questions of reasonableness under Mont. Code Ann. § 33-18-201 should generally be addressed by the finder of fact at trial rather than on motion for summary judgment. *Lorang v. Fortis Ins. Co.*, 345 Mont. 12, 192 P.3d 186, 217 (2008) ("[T]he reasonableness of an insurer's investigation is a factual issue which ordinarily must be resolved by the jury.") Cincinnati claims it conducted a reasonable investigation and determined that coverage should be denied based on the surface of the Proof of Claims and that it owed no duty to provide an explanation to a claimant who is not an insured under the Policy. Given the factual nature of the issue and the presumption in favor of the nonmoving party, this Court declines to determine, at this time, that Cincinnati acted unreasonably. Under the facts asserts, summary judgment is not appropriate on this issue.

Richardson next seeks summary judgment to determine that Cincinnati violated the automatic stay in Debtor's bankruptcy. This claim also depends on the threshold issue of whether Debtor's estate made a timely claim under the Policy. It is clear that YMC made a timely claim with the January 30, 2009, letter. However, as discussed earlier, whether that letter encompassed YCW's claims, as reflected in Proof of Claim Nos. 664, 228 and 46, is an issue of fact to be decided at trial. The Court, therefore, is not inclined to rule at this time that some or all

47

of the Policy proceeds were or are part of Edra's bankruptcy estate.

Finally, Richardson seeks summary judgment to determine that Cincinnati is liable for the entire amount claimed because no collusion occurred in the stipulated allowed claim, and that Cincinnati is estopped from litigating the merits of the underlying insurance claim or offering any defenses to indemnity coverage. This theory presupposes that a valid claim existed on the Policy and that Cincinnati wrongfully denied that claim in its February 17, 2010 letter to Richardson. This Court has determined that a genuine issue of material fact exists as to whether a timely claim was made against the Policy and whether Cincinnati denied coverage prior to the insured party voiding the claim by breaching a condition precedent of the Policy. Even if there was a valid claim against the policy and Cincinnati wrongfully denied that claim, a factual question remains as to whether Cincinnati's February 17, 2010 letter to Richardson should be deemed as conclusive notice to the policy insured of the reason for denial of coverage. This Court declines to rule as a matter of law that a letter to a third party declining to discuss a policy is a definitive explanation of denial of coverage for all purposes.

Turning to Cincinnati Insurance Company's motion for summary judgment, the Court must once again view the evidence and inferences therefrom in the light most favorable to the nonmoving party. Thus, in moving for summary judgment, Cincinnati also faces a heavy burden to establish that there is no genuine issue of material fact. Cincinnati first seeks summary judgment that, as a matter of law, it did not have an obligation to defend Edra. It presents five arguments in support of this motion, none of which is availing.

Cincinnati asserts YCW's Proof of Claim No. 46 was not made until after the expiration of the Policy and the time allowable for claims. While it is true that Proof of Claim No. 46 was

48

not filed until after April 1, 2009, Plaintiffs assert that Cincinnati had adequate notice because Proof of Claim No. 46 relates to earlier documents submitted to Cincinnati. Plaintiffs assert that the wrongful acts referred to in Mr. Sekits January 30, 2009 letter were sufficiently interrelated as to deem Proof of Claim No. 46 as having been first made on that date. Additionally, Plaintiffs assert that Proof of Claims Nos. 664 and 228 were timely submitted and based in part on the same wrongful action as Proof of Claim No. 46. As discussed earlier, the Court finds a question of fact as to whether Proof of Claim No. 46 relates back to January 30, 2009 so as to constitute a timely made claim.

Cincinnati also asserts that Proof of Claim No. 46 is not a claim under the policy because it is merely a contingent claim. The insured party is only required to show the potential for liability prior to obtaining legal defense coverage. A triable issue of fact exists as to whether Cincinnati's narrow view of the duty to defend is supported by the terms of the Policy or Montana law.

Cincinnati next argues that Debtor's wrongful acts were done while acting as an agent of YCW. These allegations depend on the alleged admissions of the Plaintiffs. These alleged admissions have been retracted and are certainly disputed. Cincinnati does not present independent verification that Debtor's wrongful acts were done in her capacity as director of YCW. Cincinnati has failed to meet its initial burden to show that there is no genuine issue of material fact regarding this issue.

Cincinnati also contends it had no obligation to defend Debtor's estate because the insured did not tender defense of Proof of Claim No. 46. Considering the host of disputed facts surrounding the tender of claim and the denial of coverage, the Plaintiffs have at least raised a

49

triable issue of fact as to whether the policy insured's failure to tender claim eliminate's Cincinnati's duty to defend under the Policy.

Finally, Cincinnati argues that it has no duty to defend Edra's estate because the insured breached conditions precedent to coverage by stipulating to liability without adequate notice to Cincinnati.  The first stipulation at to Proof of Claim No. 46 occurred on November 30, 2009; however, because no one is seeking recovery of this portion of the claim from Cincinnati, a triable issue of fact exists as to whether that stipulation is sufficiently relevant as to bar any further claims made in Proof of Claim No. 46.  The Policy contemplates actions that prejudice Cincinnati and states: "We shall not be liable for any settlement, 'defense costs', assumed obligation or admission to which we have not consented."  Part IV. Section III (C).  (SOF 18). Here, Richardson is not seeking to hold Cincinnati liable for the costs of the stipulation, so a reasonable trier of fact could conclude that the stipulated claim is not sufficiently related to the claim at issue in this case to constitute a breach of conditions precedent under the Policy.  As already suggested, a reasonable trier of fact could conclude that Cincinnati wrongfully denied coverage with its February 17, 2010 letter to Richardson.  Any stipulation after this date is irrelevant to this motion.  Plaintiffs have at least established an issue of triable fact as to whether there was a breach of conditions precedent preventing a claim.

This Court cannot conclude that Cincinnati is entitled to judgment as a matter of law with regard to Cincinnati's claim that it owed no duty to defend Edra or her estate.  Thus summary judgment cannot be granted.

Cincinnati next seeks summary judgment that it is not liable for more than nine million dollars in stipulated damages because it was bound by a November 24, 2009 Court Order under

which it exhausted the Policy limits defending Timothy Blixseth.  While the Court order does allow Cincinnati to draw down the Policy limit, it does not address any obligation owed to Edra Blixseth or her estate.  If Cincinnati owed an obligation to Debtor, it could have exhausted the portion of the Policy limit allocated to Timothy Blixseth and thus arguably satisfied its obligations under the Court Order.  Cincinnati did not seek any clarification of its own potential legal obligations.  In addition, Cincinnati arguably wrongfully denied defense coverage to Debtor's estate on February 17, 2010, but it does not claim its policy limits were exhausted until November 2010.  Plaintiffs contend that at least $4.2 million dollars remained on the policy when Cincinnati received notice of claims by the YCW trustee.  In short, unless Cincinnati can show that the November 24, 2009 court order prevented them from assuming any obligation to Debtor, this argument is without merit.

Finally, Cincinnati seeks summary judgment that it did not commit *per se* violations of the Montana Unfair Trade Practices Act because it had a reasonable basis to deny the claim.  As previously discussed, the reasonableness of Cincinnati's conduct is a question of fact.  In addition, the mere existence of reasonable grounds to deny a claim does not satisfy the obligation to promptly communicate or provide an explanation of decisions.  Interpreting the evidence and inferences in the light most favorable to the nonmoving party, and given Cincinnati's minimal communication with the concerned parties, a reasonable tier of fact could conclude that Cincinnati did not act reasonably with regard to its denial of coverage.

For the reasons discussed above, the Court will enter a separate order denying Plaintiffs' motion for summary judgment filed August 8, 2011, and Cincinnati Insurance Company's motion for summary judgment filed October 7, 2011.  Also related to the aforementioned

motions for summary judgment is Richardson's motion to strike Cincinnati's references to counsel's statements as evidence in support of Cincinnati's motion for summary judgment. The motion to strike is denied as moot. Richardson has also included within the motion to strike, a motion in limine regarding the same  references to counsel's statements. The motion in limine will be dealt with by this Court by separate order.

IT IS ORDERED:

1.    Plaintiff Ross P. Richardson, as Chapter 7 Trustee of the Estate of Yellowstone Club World LLC's Motion for Summary Judgment Against Cincinnati Insurance Company filed August 8, 2011, at docket entry no. 61 is DENIED.

2.    Defendant Cincinnati Insurance Company's Motion for Summary Judgment filed October 7, 2011, at docket entry no. 91 is DENIED.

3.    Plaintiff Ross P. Richardson's Motion to Strike CIC's References to Counsel's Statements as Evidence in Support of CIC's Motion for Summary Judgment filed October 28, 2011, at docket entry no. 107 is DENIED; the Court will rule by separate order on Plaintiff Ross P. Richardson's Motion in Limine filed October 28, 2011, at docket entry no. 107.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana