Case 2:12-cv-00017-SEH Document 35 Filed 02/08/13 Page 1 of 13

FILED
FEB - 8 2013
Clerk, U.S District Court
District Of Montana
Butte

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

### BUTTE DIVISION

| | |
|---|---|
| IN RE:<br>EDRA D. BLIXSETH,<br><br>　　　　　　　　Debtor, | Bankruptcy Case No. 09-60452-7<br><br>Adversary Proceeding No. 11-00014 |
| ROSS P. RICHARDSON, Chapter 7 Trustee for Yellowstone Club World, LLC; and RICHARD J. SAMSON, Chapter 7 Trustee for the Estate of Edra D. Blixseth,<br><br>　　　　　　　　Appellants,<br><br>vs.<br><br>CINCINNATI INSURANCE COMPANY,<br><br>　　　　　　　　Appellee. | No. CV-12-17-BU-SEH<br><br>**MEMORANDUM<br>AND ORDER** |

## INTRODUCTION

Appellants Ross P. Richardson (Richardson) and Richard J. Samson (Samson) appeal from the Memorandum and Decision and Order of the United

States Bankruptcy Court for the District of Montana dated November 14, 2011, denying Appellants' Motion for Summary Judgment in Adversary Proceeding No. 11-00014, and from the Bankruptcy Court's Memorandum of Decision, Order and Judgment of March 12, 2012, entered in favor of Appellee, Cincinnati Insurance Company (Cincinnati), following trial in the same proceeding. This Court has jurisdiction under 28 U.S.C. § 158(a).

## ISSUE PRESENTED

The parties have raised seven separate but somewhat interrelated issues in this appeal. A single issue is determinative: Did the letter of February 3, 2010, from Appellant Ross Richardson's counsel assert a timely claim covered by the terms of the insurance policy in issue? The answer must be "no."

## STANDARD OF REVIEW

The Bankruptcy Court's factual determinations are reviewed for clear error. Fed. R. Bankr. P. 8013. Its legal conclusions are reviewed *de novo*. See Neilson v. United States (In re Olshan), 356 F.3d 1078, 1083 (9th Cir. 2004).

## BACKGROUND

Debtor, Edra D. Blixseth, and her former spouse, Timothy L. Blixseth, were founders of a complicated web of corporations, real estate holdings and operating companies, including Yellowstone Mountain Club, LLC (YMC), Yellowstone

Development, LLC (YD), Big Sky Ridge, LLC, and Yellowstone Club Construction Company, LLC (collectively Yellowstone Club entities). Through the Yellowstone Cub entities, the Blixseths began development in the late 1990's of the Yellowstone Club, an ultra-exclusive, members only private ski and golf community near Big Sky, Montana.

In 2005, Timothy Blixseth worked on a plan to take the Yellowstone Club concept worldwide. He secured a $375 million loan from Credit Suisse, Cayman Islands Branch, (Credit Suisse) on behalf of YMC, YD and Big Sky Ridge, LLC. He formed Yellowstone Club World, LLC (YCW), and he then, as President of YD, YMC and Blixseth Group, Inc., and as Manager of Big Sky Ridge, LLC and YCW, executed a "Five-Party Agreement" which contemplated the purchase of certain luxurious resort properties which would be made available for use by persons who purchased memberships in YCW. In March of 2006, resort properties were purchased in France, Mexico, the Turks and Caicos, and Scotland.

## The Cincinnati Insurance Policy

On January 31, 2008, Cincinnati issued Blue Chip Insurance Policy No. BCP 8779827 (Policy) to YMC and its subsidiaries that included Directors and Officers (D&O) liability coverage for YMC and its subsidiaries' officers and directors. The Policy was a "claims made" policy that provided coverage for claims made

3

against an insured during the policy period of January 31, 2008, through January 31, 2009. Edra Blixseth served as an officer, director or managing agent of YMC and its subsidiary YD, during the policy period.

## Policy Provisions

The policy insuring agreement provided in pertinent part:

DIRECTORS AND OFFICERS LIABILITY AND COMPANY COVERAGE

SECTION I - INSURING AGREEMENTS

A. We will pay on behalf of the "directors and officers" all "loss" which they shall be legally obligated to pay . . . resulting from any "claim" first made during the "policy period," or any "extended reporting period" included in or endorsed to the policy, for a "wrongful act."

\* \* \*

We will have the right and duty to defend the "insureds" against any such "claim."

(Doc. 11-1, Policy at Part I, § I).

In determining the date a claim is made, the Policy provided that "all claims based upon or arising out of the same 'wrongful act' or any 'interrelated wrongful acts' shall be considered a single 'claim[,]'" and each claim shall be "deemed to be first made at the earliest of the following times:

1. When notice of the earliest 'claim' arising out of such 'wrongful act' or 'interrelated wrongful acts' is received in writing by a 'policy insured' or by us, whichever comes first; or

4

>   2.  When notice pursuant to Section V of the General Provisions of a 'wrongful act' giving rise to such 'claim' is given."

(Doc.11-1, Policy at Part IV, § II, ¶ E).

The notice of wrongful act, Part IV, Sections V and XVIII of the Policy, provided:

> SECTION V - NOTICE OF A WRONGFUL ACT
>
> If prior to the end of the 'policy period' . . . any of the 'policy insureds' first become aware of a specific 'wrongful act' they believe is likely to give rise to a 'claim,' and if any of the 'policy insureds' give us written notice as soon as practicable, but prior to the end of the 'policy period' of . . . :
>
> A.  The specific 'wrongful act;' and
>
> B.  The injury or damage which has or may result therefrom; and
>
> C.  The circumstances by which the 'policy insureds' first became aware thereof,
>
> then any 'claim' subsequently made arising out of such 'wrongful act' shall be deemed to have been made when notice of the 'wrongful act' was first given."

(Doc. 11-1, Policy at Part IV, § V).

> SECTION XVIII - EXTENDED REPORTING PERIOD[]
>
> C.  The Extended Reporting Period[] extend[s] coverage to "claims' first made during the length of the time covered by the applicable Extended Reporting Period provided the 'wrongful act' was committed, attempted or allegedly committed or attempted prior to the end of the 'policy period' . . .

D.  A 60-day Basis Extended Reporting Period is automatically provided without additional charge. The Basic Extended Reporting Period starts immediately after the end of the 'policy period' . . .

(Doc. 11-1, Policy at Part IV, § XVIII).

Thus, a covered claim could be deemed to have been timely made if appropriate written notice of the "wrongful act" was given to Cincinnati by a "policy insured" prior to the end of the extended reporting period (i.e., April 1, 2009). Id.

## Bankruptcy Filings

On November 11, 2008, the Yellowstone Club entities, including YMC and YD filed a Chapter 11 bankruptcy petition (Bankruptcy Case No. 08-61570). On January 25, 2009, an involuntary Chapter 7 bankruptcy petition was filed against Yellowstone Club World, LLC (Bankruptcy Case No. 09-60061). Richardson was appointed as the Chapter 7 Trustee for the YCW bankruptcy. John Amsden, Esq. was hired by Richardson as counsel for the bankruptcy estate. On March 26, 2009, Edra Blixseth filed a Chapter 11 bankruptcy petition (Bankruptcy Case No. 09-60452). Her bankruptcy was converted to a Chapter 7 bankruptcy on May 29, 2009. Samson was appointed as the Chapter 7 Trustee for the bankruptcy.

## Notice of Wrongful Acts

On January 30, 2009, before the policy period expired, attorney Mathew

6

Sekits, Esq. (Sekits), counsel for YMC, sent two letters to Cincinnati giving it notice of certain specific "wrongful acts" that were likely to give rise to a "claim" against its insureds. (Docs. 11-4, 11-5). Both letters identified the specific "wrongful acts" as the unlawful or unauthorized transfer of assets to persons or entities outside of YMC:

> Yellowstone has become aware of transfers of assets to persons and/or entities outside Yellowstone without proper authorization or in violation of applicable law. These unauthorized transfers could result in injury and damage to Yellowstone's creditors. Yellowstone first became aware of these unauthorized transfers after it filed for bankruptcy, while it was reviewing its internal financial documents.

Id. The January 30 letters tendered the defense against, and sought indemnity for, all "claims" against all "insureds" that may arise out of the "wrongful acts" specified in the letters (i.e., the unlawful transfer of assets). (Docs. 11-4, 11-5).

## Adversary Proceeding No. 09-00014

On February 25, 2009, Adversary Proceeding No. 09-00014 (AP 14), Credit Suisse, Cayman Islands Branch v. Official Committee of Unsecured Creditors *et al.*, was filed in the bankruptcy of the Yellowstone Club entities. Timothy Blixseth intervened. The Official Committee of Unsecured Creditors filed a counterclaim against Blixseth. The counterclaim alleged that Blixseth breached fiduciary duties to YMC and TD by, *inter alia*, illegally transferring Credit Suisse

7

loan proceeds to himself or to entities outside YMC and YD. Blixseth submitted the counterclaim to Cincinnati for coverage and defense. Cincinnati agreed to defend Blixseth because the claims of unauthorized transfers in the counterclaim arose out of the "wrongful acts" of which Cincinnati received notice in the January 30, 2009, letters from Skeits.

## Adversary Proceeding No. 09-00018

On March 3, 2009, Adversary Proceeding No. 09-00018 (AP 18), Snow v. Timothy Blixseth, Edra Blixseth, et al., was filed. The Snow Plaintiffs in AP 18 alleged that Timothy and Edra Blixseth each breached fiduciary duties to the YMC and TD shareholders by making illegal and unauthorized transfers of Credit Suisse loan proceeds to themselves. On March 9, 2009, YMC, through its counsel Sekits, submitted AP 18 to Cincinnati for coverage and defense. Cincinnati agreed to defend the Blixseths because the claims of unauthorized transfers arose out of the "wrongful acts" of which Cincinnati received notice in the January 30, 2009, letters from Skeits.

## Proof of Claim No. 664

On March 17, 2009, Richardson filed Proof of Claim No. 664-1 against YMC in Bankruptcy Case No. 08-61570. As amended on July 20, 2009, it alleged that agents of various Cincinnati-insured entities, which included Edra

Blixseth, had failed to record options and rights of use concerning certain resort properties that had been contractually promised to YCW.

## Proof of Claim No. 46

On July 29, 2009, Richardson, in his capacity as the YCW Chapter 7 Trustee, filed Proof of Claim No. 46-1 against Edra Blixseth in Bankruptcy Case No. 09-60452. It alleged that Ms. Blixseth had failed to record options and rights of use concerning certain resort properties that had been contractually promised to YCW.

Proofs of Claim Nos. 664 and 46 were based upon the same conduct. Both sought the same damage amount.

## YCW's February 3, 2010, Notice to Cincinnati

On February 3, 2010, ten months after the extended reporting period expired, Cincinnati received a letter from Amsden, counsel for YCW Chapter 7 Trustee Richardson, requesting that Cincinnati pay Proof of Claim 664 in Bankruptcy Case No. 08-61570, pay Proof of Claim 46 in Bankruptcy Case No. 09-60452, and pay the claims asserted against Timothy Blixseth and a number of his entities in Richardson v. Blixseth et al., Adversary Proceeding No. 09-00086. The Amsden letter of February 3, 2010, provided, in pertinent part:

> I represent Ross P. Richardson, Chapter 7 Trustee for

9

Yellowstone Club World, LLC. We hereby tender the following matters to you for payment:

1. Proof of Claim in Yellowstone Mountain Club, LLC, Case No. 08-61570; and POC NO. 664-1, dated March 17, 2009;

2. Amended Proof of Claim in Yellowstone Mountain Club, LLC, Case No. 08-61570; and POC No. 664-2, dated July 20, 2009;

3. Proof of Claim in Edra D. Blixseth, Case No. 09-60452; and POC No. 46-1, dated July 29, 2009;

4. Amended Proof of Claim in Edra D. Blixseth, Case No. 09-60452; and POC No. 46-2, dated August 4, 2009; and

5. Second Amended Complaint in Richardson v. Blixseth and Huckestein, et al, Case No. 09-00086, Dkt. No. 9, dated November 24, 2009.

The insureds' conduct complained of, as indicated in the above, includes without limitation, the following:

1. Failure to respond to litigation pending against Yellowstone Club Development and/or its subsidiary ('YD'), and Yellowstone Club World, LLC ('YCW'), resulting in a default judgment exceeding $16,000,000;

2. Failing to respond to judgment by the Lemond group against Yellowstone Mountain Club and/or its subsidiaries ('YMC') and YCW, resulting in a judgment exceeding $13,000,000;

3. Failure to adequately document and protect the

10

        interests of YMC and YD, resulting in claims as specified above;

4. Failure to take steps to block a fraudulent transfer in favor of YMC and Edra Blixseth, resulting in judgments exceeding $1 million; and

5. Failure to safeguard the property of others, including YCW, resulting in claims as specified above.

(Doc. 11-7 at 1-2).

## DISCUSSION

Claims covered by the terms of the policy were specifically defined as those "claim[s] first made during the 'policy period,' or any 'extended period' included in or endorsed to the policy, for a 'wrongful act.'" "Claim," "policy period," and "extended reporting period" are all terms defined in the policy itself. It is undisputed that the first and only assertion of a "claim" by Richardson was in Amsden's February 3, 2010, letter and its attachments. The "extended policy period" had expired on April 1, 2009. Nothing in the language of the "extended reporting period" definition can be said to justify characterization of the February 3, 2010, letter as within its ambit.

Moreover, it is clear that the Amsden letter of February 3, 2010, was not an attempt to assert a claim that fit within the notices of wrongful acts in the Sekits letters of January 30, 2009. Amsden testified at trial in the underlying Adversary

11

Proceeding that at the time he sent the February 3, 2010, letter to Cincinnati, he was not aware of the letters sent by Sekits to Cincinnati on January 30, 2009. Moreover, all of the wrongful acts described in the Amsden letter of February 3, 2010, are premised upon the failure to do something – the "[f]ailure to respond to litigation," the failure "to respond to a judgment," the "[f]ailure to adequately document and protect the interests of YMC and YD," the "[f]ailure to take steps to block a fraudulent transfer," and the "[f]ailure to safeguard the property of others." (Doc. 11-7 at 2). The wrongful acts identified in the Sekits' letters of January 30, 2009, on the other hand, are premised upon the "unauthorized transfer[]" of assets. (Docs. 11-4, 11-5).

## CONCLUSION

In short, the basic requirement for notice in the policy was not met. No coverage can be said to have been triggered. Groshong v. Sapp (In re MILA, Inc.), 423 B.R. 537, 540 (9th Cir. BAP 2010). Absent such coverage no duty to defend under the terms of the policy can be said have arisen. See Travelers Cas. and Sur. Co. v. Ribi Immunochem Research, Inc., 108 P.3d 469, 478-79 (Mont. 2005). The Bankruptcy Court was correct in dismissing the claim against Cincinnati.

## ORDER

The Memorandum of Decision and Order dated November 14, 2011, and the Memorandum of Decision, Order and Judgment dated March 12, 2012, of the United States Bankruptcy Court in Adversary Proceeding No. 11-00014 are AFFIRMED.

DATED this 8th day of February, 2013.

SAM E. HADDON
United States District Judge